# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>WILLIAM E. BARONI, JR. and<br>BRIDGET ANNE KELLY | Hon. Susan D. Wigenton<br><br>Crim. No. 15-193 (SDW) |

---

## BRIEF IN OPPOSITION TO GIBSON DUNN & CRUTCHER'S
## MOTION TO QUASH

---

On the brief:

Jennifer Mara, Esq.
Michael Baldassare, Esq.
Dillon Malar, Esq.

**BALDASSARE & MARA LLC**
570 Broad Street, Suite 900
Newark, New Jersey 07102
(973) 200-4066

*Attorneys for Defendant William E. Baroni, Jr.*

## **TABLE OF CONTENTS**

I.   PRELIMINARY STATEMENT ....................................................................................... 1

II.  THE SUBPOENA .............................................................................................................. 2

III. THE MOTION TO QUASH SHOULD BE DENIED ....................................................... 3

    A.   The Legal Standard .................................................................................................. 3

    B.   The Court Should Order GDC to Produce Their Attorney Notes, as well as
         Other Versions and Drafts of the Interview Memoranda ......................................... 4

    C.   The Court Should Order GDC to Produce the Requested Metadata. ...................... 9

IV.  CONCLUSION ................................................................................................................ 11

I.      **PRELIMINARY STATEMENT**

Gibson Dunn asks the Court to accept too much.  In sum, the firm claims that it billed New Jersey taxpayers nearly $10 million dollars, but that not a single lawyer took a single note during 75 interviews in the most high profile political case in recent years.  That assertion defies common sense, the practice of law and Gibson Dunn's own policies and procedures with respect to every other internal investigation it has conducted.  It simply cannot be the case.

So too does Gibson Dunn ask the Court to accept too much when it claims that there are no prior versions, emails, other documents or metadata that will shed light on anything to do with the veracity of its witness summaries or anything at all involved in this case.  That incredible position ignores the reality of everyday life involving email, computers and documents.  It is inconceivable that – as Gibson Dunn argues – there is one version of each memoranda on one computer, *i.e.*, it was never emailed in draft form, there are no tracked changes, comments or the like.  Gibson Dunn would have Your Honor accept that versions of the memoranda were never emailed among or between attorneys, marked up to correct or revise statements, and so on.  It is safe to say that there is no document in any law firm or, respectfully, even in the Chambers of any Judge, that exists in one place, in one form, in one version.  It is not how the world works.

Ultimately, Gibson Dunn's motion to quash should be denied.  It presents nothing more than a "re-do" of the arguments this Court already found unpersuasive.  Nothing has changed.  Just as Your Honor found already, the subpoenaed documents satisfy the legal standard and should be produced.[1]

---

[1] Mr. Baroni joins in the legal arguments advanced by Ms. Kelly in her opposition to Gibson Dunn's motion to quash.

**II.      THE SUBPOENA**

By Letter Order dated July 10, 2015, this Court granted Defendants' motion for a Rule 17(c) subpoena regarding notes from interviews conducted by Gibson, Dunn & Crutcher LLP ("GDC"). Shortly thereafter, counsel for Defendant Kelly served a Rule 17(c) subpoena upon GDC, seeking the following categories of documents:

> a.   Any and all handwritten or typed notes, stenographic transcripts and audio and/or video recordings of witness interviews conducted by Gibson Dunn during its representation of the Office of the Governor of New Jersey from on or about January 16, 2014 to the present.
>
> b.   Any and all metadata and the document properties for all typed notes and interview summaries created during interviews of witnesses during Gibson Dunn's representation of the Office of the Governor of New Jersey from on or about January 16, 2014 to the present.

On August 21, 2015, GDC served its objections and responses to the subpoena upon Defendants, and filed the motion to quash that is currently before the Court.

For the reasons discussed herein, GDC's motion to quash should be denied and the Court should order GDC to produce the subpoenaed materials.

2

## III. THE MOTION TO QUASH SHOULD BE DENIED

### A. The Legal Standard

Rule 17(c) provides that:

> A subpoena may order the witness to produce any books, papers, documents, data, or other objects the subpoena designates. The court may direct the witness to produce the designated items in court before trial or before they are to be offered in evidence. When the items arrive, the court may permit the parties and their attorneys to inspect all or part of them.

Fed. R. Crim. P. 17(c)(1). Rule 17(c) has been recognized as a "convenient and time saving tool for trial preparation," which can be invoked by either the defendant or the government. *United States v. Messercola*, 701 F. Supp. 482, 485 (D.N.J. 1988); *see also United States v. Cuthbertson*, 630 F.2d 139, 144 (3d Cir. 1980) ("*Cuthbertson* I") ("[R]ule 17(c) is designed as an aid for obtaining relevant evidentiary material that the moving party may use at trial."). The rule was enacted to expedite trials by providing "a time and place before trial for the inspection of subpoenaed materials." *Bowman Dairy Co. v. United States*, 341 U.S. 214, 220 (1951).

As the Court observed in its Order granting the Defendants' request for a Rule 17 subpoena, the party seeking pretrial production and inspection of documents must show:

> (1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general "fishing expedition."

*United States v. Nixon*, 418 U.S. 683, 699-700 (1974). The *Nixon* Court summarized the analysis as requiring the party seeking the subpoena to demonstrate (1) relevancy, (2) admissibility, and (3) specificity. *Nixon*, 418 U.S. at 700.

"A subpoena for documents may be quashed if their production would be 'unreasonable or oppressive,' but not otherwise." *Id.* at 698 (quoting Fed. R. Crim. P. 17(c)(2)). The decision

3

to quash or modify a Rule 17 subpoena is "committed to the district court's discretion." *Cuthbertson* I, 630 F. 2d at 145.

> **B.    The Court Should Order GDC to Produce Their Attorney Notes, as well as Other Versions and Drafts of the Interview Memoranda.**

GDC's motion to quash should be denied with respect to the first category of documents, *i.e.*, attorney notes, because it <u>has not even attempted to argue</u>, let alone show, that producing such documents would be "unreasonable or oppressive," as required by Rule 17(c)(2). Instead, in its brief in support of the motion to quash, GDC explains the process it employed for preparing interview memoranda:

> Under our protocol and practice for this investigation, witness interviews were summarized electronically by one attorney while the interviews were being conducted and then edited electronically into a single, final version. Those final interview memoranda were then printed and ultimately released publicly.

Thus, GDC claims that it "has no recordings, transcripts, or notes memorializing [its] interviews, other than the interview memoranda summarizing Gibson Dunn's interviews." GDC asserts that its production of the interview memoranda, together with the foregoing explanation, "moots the controversy between GDC and Defendants as to the first demand in the subpoena," *i.e.*, the demand for attorney notes. GDC is wrong for three reasons.

<u>First</u>, GDC's explanation of the process it used to conduct and memorialize witness interviews demonstrates that some form of electronic drafts/notes exist. Indeed, as noted, *supra*, GDC states that the summary of each interview was "edited electronically into a single, final version," strongly suggesting – if not outright establishing – that multiple draft versions exist. In addition, GDC attorney Alexander Southwell states in his declaration that "[t]he metadata associated with the interview memoranda does not contain the contents of any *versions* of the interview memoranda." Southwell Decl. at p. 3. The firm should be ordered to produce all electronic versions/drafts/notes to Defendants in accordance with the subpoena.

As the Court has already found, such documents are "clearly relevant," not otherwise procurable by Defendants, may be admissible at trial, and may be useful to expedite trial. And

4

GDC has made no argument or showing that producing prior electronic versions/drafts/notes would be "unreasonable or oppressive," as required by Rule 17(c)(2). In fact, it appears that GDC has not made any attempt at all to retrieve prior electronic versions or drafts of the interview memoranda.

Second, if the protocol and practice for "this investigation" was precisely as described by GDC, and it resulted in no handwritten or typewritten notes being taken and no draft memoranda being written and/or retained, such a process would be completely outside the norm -- even bizarre -- and contrary to the experience of every defense lawyer in this case. In fact, in *Gruss v. Zwirn*, a New York case in which GDC was ordered to turn over its attorney notes to Plaintiff, a Co-Chair of GDC's White Collar Defense and Investigations Practice Group stated:

> Mr. Goldsmith and I used the same general procedure for this matter as for other internal investigations. We trained the associates concerning the relevant legal and factual issues, supervised their review of documents, reviewed interview outlines, and *assigned them responsibility for taking handwritten notes during witness interviews based on specific instructions premised on the partners' perspectives on relevance and probity.*

*Gruss v. Zwirn*, 09-CV-6441, Docket No. 63, at p. 2. Thus, the investigative process used in this case also appears to have departed radically from that used in other GDC investigations.

If such a unique and unorthodox practice was in fact employed in GDC's investigation, it is easy to draw the conclusion that it was done deliberately, in order to avoid public scrutiny. Unfortunately, GDC's protocol also means that the New Jersey taxpayers paid millions of dollars for an investigation in which most of the lawyers took absolutely no notes over the course of 75 witness interviews.

Given the questionable process for interviewing witnesses proffered by GDC, the firm should be required to provide a detailed explanation regarding the mechanics of that process. For example:

- Did the same attorney electronically summarize an interview if it continued beyond one day?

5

- Was a version of the summary saved after the first day and again after the second day?
- Did the interviewing attorneys gather around one laptop after each witness interview and approve a single version of the summary?
- Did each of the attorneys electronically edit the memoranda after the interviews took place? If so, did each attorney "save over" the prior version?
- Was the electronic summary emailed to the attorneys?

At the very least, the Court should appoint a neutral computer expert to conduct a forensic examination of GDC's electronic document retention system and computer records to determine whether any prior versions or drafts of interview memoranda exist, which attorneys authored or edited such documents, when the documents were created and/or edited, etc. The Court has the discretionary power to appoint such an expert. Fed. R. Evid. 706(a); *cf.* Fed. R. Civ. P. 53; *Antioch Co. v. Scrapbook Borders, Inc.*, 210 F.R.D. 645, 653-54 (D. Minn. 2002) (appointing neutral computer expert to examine defendant's computer equipment and records). In the event the Court appoints such an expert, Mr. Baroni respectfully submits that <u>the related costs should be borne by GDC (and not by the Defendants or the citizens of New Jersey) given that it received nearly $10 million in taxpayers' money to employ questionable and unorthodox protocols that created all these problems in the first place.</u>

<u>Third</u>, the government's silence regarding the motion to quash is troubling for a number of reasons. By GDC's own account, it was retained in part "to facilitate cooperation with the U.S. Attorney's Office's investigation and other relevant inquiries." Mastro Report at 35. Indeed, GDC provided its report to the U.S. Attorney's Office, consistent with its "mandate to facilitate cooperation with that Office's investigation," and "periodically briefed the U.S. Attorney's Office" on its findings. *Id.* at 36. To date, the government has not commented on whether it approved, tacitly or explicitly, the use of such a unique, unorthodox and wholly inadequate protocol for conducting the GDC investigation.

Moreover, and in the alternative, the documents in question should be produced pursuant to Rule 16(a)(1)(E). That Rule provides in relevant part that the government must permit a defendant to inspect and copy an item that is material to preparing the defense "if the item is within the government's possession, custody, or control." Given GDC's "cooperation" with the government, the documents are in the government's "possession, custody or control" for purposes of Rule 16 notwithstanding the fact that the documents are in the physical possession of GDC. In other words, because GDC and the government have openly coordinated their respective investigations, the government clearly may obtain the requested documents from GDC upon demand. *See United States v. Stein*, 488 F. Supp. 2d 350, 369-70 (S.D.N.Y. 2007) (ordering government to produce certain documents identified in Rule 17(c) subpoena served upon KPMG after finding that government had legal control of such documents). Therefore, the documents should be produced to Defendants just as they would have been had they been in the government's physical possession.

In *Stein*, the court held that certain documents sought by the defendants by way of subpoena and in the physical possession of their former employer, KPMG, should be produced pursuant to Rule 16(a)(1)(E) because such documents were material to the preparation of the defense and were within the government's "possession, custody or control."[2] There, KPMG had been cooperating fully with the government pursuant to a Deferred Prosecution Agreement, which included a provision requiring KPMG's prompt production of documents to the government. The court found that the subpoenaed documents were material to preparing the defense and were within the government's control pursuant to the DPA. Thus, the court found that the requested documents should be produced in accordance with Rule 16(a)(1)(E), rejecting both the government and KPMG's argument that the *Nixon* standard should be applied. The court also rejected KPMG's argument that the documents need be requested first by the

---

[2] The "materiality standard [of Rule 16] normally is not a heavy burden; rather, evidence is material as long as there is a strong indication that it will play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal." *United States v. Lloyd*, 992 F.2d 348, 351 (D.C. Cir. 1993) (internal quotation marks and citations omitted). Under this standard, the electronic notes and prior versions of interview memoranda that Defendants seek are clearly material.

7

government and then produced by the government to the defendants, noting that "[n]o rational purpose would be advanced by going through the charade or ordering the government to request the documents from KPMG so that the government may turn them over to defendants." Accordingly, the court ordered that the documents in KPMG's physical possession be produced to the defendants.

In so holding, the *Stein* court relied upon *United States v. Kilroy*, 523 F. Supp. 206 (E.D. Wis. 1981). In *Kilroy*, the defendant, a former employee of Standard Oil, sought discovery from the government under Rule 16, specifically certain bank documents held by Standard Oil. The government refused. Because Standard Oil was cooperating with the government, the court ruled in the defendant's favor. The *Kilroy* court opined:

> I see no objection to an order requiring the Government, as the defendant asks, to use its "best efforts" to obtain from Standard Oil all of the documents in its possession which came out of the defendant's former office. The Government has 30 days to try to obtain the records. Standard Oil is admittedly not a party to this suit and has no obligation to turn over any of its records to the defendant or to the Government except at trial pursuant to a valid subpoena. Since Standard Oil is cooperating with the Government in the preparation of the case and is making available to the Government for retention in the Government's files any records which Standard Oil has and which the Government wants, however, it is not unreasonable to treat the records as being within the Government's control at least to the extent of requiring the Government to request the records on the defendant's behalf and to include them in its files for the defendant's review if Standard Oil agrees to make them available to the Government. The alternative course is to require the defendant to subpoena the records for production at trial and, at the time of production, to grant him a recess adequate to allow him to thoroughly review the records. I see no need for disruption of the trial in that manner when it appears that the records are, practically speaking, within the Government's control.

*Id.* at 215.

As did the courts in *Stein* and *Kilroy*, this Court should order GDC to produce the requested versions/drafts/notes directly to defendants pursuant to Rule 16(a)(1)(E) because those

8

documents are material to preparing a defense and are in the "possession, custody or control" of the government.

### C. The Court Should Order GDC to Produce the Requested Metadata.

The Court should deny GDC's motion to quash the subpoena request regarding metadata. GDC asserts that "[d]iscovery into metadata is … commonly restricted to a narrow set of civil cases – those in which civil claims or defenses run on 'who received what information and when.'" Br. at 11. In support of this contention, GDC relies primarily on old cases from courts outside this Circuit. The recent trend in this District and others in the Third Circuit is almost exactly the opposite of that represented by GDC. *See, e.g., Romero v. Allstate Ins. Co.*, 271 F.R.D. 96, 107 (E.D. Pa. 2010) ("Multiple courts have found that, in light of the emerging recognition of the benefits of producing metadata, the burden falls on the party objecting to its production to show undue hardship and expense."); *see also Younes v. 7-Eleven, Inc.*, No. CIV.A. 13-3500 RMB/J, 2015 WL 1268313, at *4 (D.N.J. Mar. 18, 2015) ("Generally, the burden rests with the party objecting to the production of metadata or ESI to show undue hardship or expense."); *Peterson v. Matlock,* No. CIV.A. 11-2594 FLW D, 2014 WL 5475236, at *1 (D.N.J. Oct. 29, 2014) (holding burden rests with the objecting party to show undue hardship or expense); *Susquehanna Commercial Fin., Inc. v. Vascular Res., Inc.,* 2010 WL 4973317, at *13 (M.D. Pa. Dec. 1, 2010) (same); *Camesi v. Univ. of Pittsburgh Med. Ctr.*, C.A. No. 09–85, 2010 WL 2104639, at *7 (W.D. Pa. May 24, 2010) (same).

Indeed, even cases and authorities relied upon by GDC indicate that the responding party should produce files in the original format with metadata when requested in the first instance. *See Aguilar v. Immigration & Customs Enforcement Div. of U.S. Dep't of Homeland Sec.*, 255 F.R.D. 350 (S.D.N.Y. 2008) ("There is a clear pattern in the case law concerning motions to compel the production of metadata. Courts generally have ordered the production of metadata when it is sought in the initial document request and the producing party has not yet produced

9

the documents in any form."). The *Sedona Principles*, relied upon by the *Aguilar* court, provide that:

> Absent party agreement or court order specifying the form or forms of production, production should be made in the form or forms in which the information is ordinarily maintained or in a reasonably usable form, ***taking into account the need to produce reasonably accessible metadata that will enable the receiving party to have the same ability to access, search, and display*** the information as the producing party where appropriate or necessary in light of the nature of the information and the needs of the case.

The Sedona Principles Second Edition; Best Practices Recommendations & Principles For Addressing Electronic Document Production, Principle 12 (The Sedona Conference Working Group Series June 2007 Version), *available at* https://thesedonaconference.org/publication/The%20Sedona%20Principles) (emphasis added).

Thus, under the Sedona Principles, GDC should provide the documents in their "native" format, *i.e.*, Microsoft Word. This would ensure, at the very least, that the metadata associated with the interview memoranda would be accessible to the Defendants.

## IV. CONCLUSION

For all the foregoing reasons, William Baroni respectfully requests that the Court deny GDC's motion to quash Defendants' Rule 17(c) subpoena and order GDC to produce responsive documents.

                                      Respectfully submitted,
                                      **BALDASSARE & MARA, LLC**

By: *[signature: Jennifer Mara]*

                                      Jennifer Mara
                                      **BALDASSARE & MARA, LLC**
                                        570 Broad Street
                                        Newark, New Jersey 07102
                                        Telephone: (973) 200-4066
                                        Facsimile: (973) 556-1076

                                      *Attorneys for Defendant William Baroni*

                                      Dated: September 21, 2015