GIBSON, DUNN & CRUTCHER LLP
Randy M. Mastro
Alexander H. Southwell (admitted *pro hac vice*)
200 Park Avenue
New York, NY  10166-0193
Phone: (212) 351-3825
Fax: (212) 351-5219
E-mail: RMastro@gibsondunn.com
*Attorneys for Nonparty Gibson, Dunn & Crutcher LLP*

**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>        v.<br><br>WILLIAM BARONI, et. al,<br><br>                Defendants. | No. 2:15-cr-00193-SDW |

**REPLY OF NONPARTY**
**GIBSON, DUNN & CRUTCHER LLP ON ITS**
**MOTION TO QUASH DEFENDANTS' SUBPOENA *DUCES TECUM***
<u>**PURSUANT TO RULE 17(c)**</u>

**TABLE OF CONTENTS**

                                                                                                   Page

A.     The Court Did Not Determine That The Subpoena Satisfies Rule 17(c) Before Nonparty GDC Moved To Quash. .............................................................. 1

B.     The Subpoena's First Demand Is Not At Issue In The Motion Because Nonparty GDC's Production Of The Interview Memoranda Responded To That Demand In Full. ...................................................................................................... 3

C.     The Second Demand Fails The *Nixon* Test Because The Metadata Sought Is Completely Irrelevant To The Case. ................................................................... 5

D.     Rule 16 Does Not Apply Here, And Defendants Fail To Satisfy It In Any Event. ..................................................................................................................... 8

E.     In The Alternative, The Work-Product Doctrine Protects The Law Firm Metadata Demanded. ............................................................................................ 10

## **TABLE OF AUTHORITIES**

Page(s)

### Cases

*Arbaugh v. Y & H Corp.*,
   546 U.S. 500 (2006) ............................................................................................... 4

*Bowman Dairy Co. v. United States*,
   341 U.S. 214 (1951) ............................................................................................. 10

*Ford v. Mercer Cty. Corr. Ctr.*,
   171 F. App'x 416 (3d Cir. 2006) .......................................................................... 10

*In re Von Bulow*,
   828 F.2d 94 (2d Cir. 1987) ................................................................................... 11

*Murphy v. Hunt*,
   455 U.S. 478 (1982) ............................................................................................... 4

*United States v. Amirnazmi*,
   645 F.3d 564 (3d Cir. 2011) .............................................................................. 1, 5

*United States v. Burger*,
   773 F. Supp. 1419 (D. Kan. 1991) ......................................................................... 6

*United States v. Crews*,
   No. 10-cr-663-4, 2012 WL 93176 (E.D. Pa. Jan. 12, 2012) .................................. 7

*United States v. Cuthbertson*,
   630 F.2d 139 (3d Cir. 1980) .............................................................................. 5, 7

*United States v. Cuthbertson*,
   651 F.2d 189 (3d Cir. 1981) .................................................................................. 7

*United States v. Deleon*,
   No. 12-mj-90069, 2012 WL 4951981 (D. Kan. Oct. 17, 2012) ............................ 4

*United States v. Dupree*,
   No. 10-cr-627, 2011 WL 2006295 (E.D.N.Y. May 23, 2011) .............................. 8

*United States v. Einsenhart*,
   43 F. App'x 500 (3d Cir. 2002) ............................................................................. 7

*United States v. Georgiou*,
   No. 09-cr-88, 2009 WL 2973035 (E.D. Pa. Sept. 16, 2009) ................................. 8

*United States v. Hobbs*,
   612 F. App'x 94 (3d Cir. 2015) ............................................................................. 6

*United States v. Johnson*,
   No. 14-cr-412, 2014 WL 6068089 (N.D. Cal. Nov. 13, 2014) ............................. 4

*United States v. Krall*,
   No. 07-cr-607-01, 2009 WL 2394288 (E.D. Pa. Aug. 4, 2009) ...................... 2, 10

## TABLE OF AUTHORITIES
### (continued)

Page(s)

*United States v. Kubini*,
  No. 11-cr-14, 2013 WL 5963392 (W.D. Pa. Nov. 7, 2013) .................................................... 2

*United States v. Lacerda*,
  No. 12-cr-303, 2013 WL 3177814 (D.N.J. June 19, 2013) .................................................... 9

*United States v. Maniktala*,
  934 F.2d 25 (2d Cir. 1991) ...................................................................................................... 9

*United States v. Marchisio*,
  344 F.2d 653 (2d Cir. 1965) .................................................................................................... 5

*United States v. Mason*,
  No. 05-cr-324, 2008 WL 1909115 (D. Ore. Apr. 25, 2008) .................................................... 8

*United States v. Merlino*,
  No. 99-cr-363, 2001 WL 283165 (E.D. Pa. Mar. 19, 2001) .................................................... 8

*United States v. Nektalov*,
  No. 03-cr-828, 2004 WL 1574721 (S.D.N.Y. July 14, 2004) .................................................. 4

*United States v. Nelson*,
  No. 10-cr-414, 2011 WL 2207584 (S.D.N.Y. June 3, 2011) ................................................... 8

*United States v. Nixon*,
  418 U.S. 683 (1974) ................................................................................................................ 1

*United States v. Onyenso*,
  No. 12-cr-602, 2013 WL 5322651 (D.N.J. Sept. 20, 2013) ................................................. 2, 7

*United States v. Ramos*,
  27 F.3d 65 (3d Cir. 1994) ........................................................................................................ 5

*United States v. Stein*,
  488 F. Supp. 2d 350 (S.D.N.Y. 2007) ........................................................................... 8, 9, 10

*United States v. Tillman*,
  No. 08-cr-254, 2009 WL 3401721 (W.D. Pa. Oct. 20, 2009) ................................................. 8

*United States v. Zolin*,
  491 U.S. 554 (1989) .............................................................................................................. 10

*Westinghouse Elec. Corp. v. Repub. of Philippines*,
  951 F.2d 1414 (3d Cir. 1991) ................................................................................................ 11

# TABLE OF AUTHORITIES
## (continued)

Page(s)

**Rules**

Fed. R. Crim. P. 16(a)(1)(E)(ii) ................................................................................................. 9

Fed. R. Crim. P. 16(a)(1)(E)(iii) ................................................................................................ 9

Fed. R. Crim. P. 17(c)(2) ........................................................................................................... 2

Nonparty Gibson, Dunn & Crutcher LLP ("GDC") has fully complied with the first demand in Defendants' subpoena by providing the only documents we have in this regard—the interview memoranda themselves—and, under oath, describing the process by which we memorialized those interviews and confirming that we have no other notes, transcripts, or recordings, other than the interview memoranda themselves.  That full compliance renders moot any controversy as to the first demand.  As to the second demand, the subpoena should be quashed outright because it fails to satisfy Rule 17(c)'s requirements of relevance, admissibility, and specificity.  *United States v. Nixon*, 418 U.S. 683, 699-700 (1974); *see United States v. Amirnazmi*, 645 F.3d 564, 595 (3d Cir. 2011) ("[T]he Rule 17(c) test outlined in *Nixon* pertains to the production of documents in advance of trial.").  Tellingly, Defendants offer no *facts* in opposition, only invective and unadorned speculation, which are inadequate to sustain a Rule 17(c) subpoena.  Nor do Defendants identify any authorities allowing, against a nonparty in a criminal proceeding, the kind of extraordinary discovery they seek into materials whose only asserted relevance to the pending trial hinges on their theoretical impeachment use (a rationale disallowed under Third Circuit precedent), and which are especially likely to confuse the jury if used at trial and thus subject to exclusion under the Federal Rules of Evidence.  Now that Defendants have been given full opportunity to put forward their contentions, and now that those contentions have only underscored the incompatibility between their metadata demand and controlling law, the proper course is to quash the subpoena as to the second demand.

    **A.**    **The Court Did Not Determine That The Subpoena Satisfies Rule 17(c) Before Nonparty GDC Moved To Quash.**

Defendants have not met their obligation to demonstrate that the subpoena satisfies the Rule 17(c) test *Nixon* installed.  *See* 418 U.S. at 700 (construing Rule 17(c) to require subpoena proponent, "in order to carry his burden," to "clear three hurdles: (1) relevancy; (2) admissibility;

1

(3) specificity"). Defendants pervasively err in contending (ECF No. 35, Joint Opp'n 1, 2, 5, 15; ECF No. 36, Baroni Opp'n 1, 4) that this Court "already" assessed the subpoena under Rule 17(c) and found in favor of Defendants on that critical question. Defendants ignore the clear distinction between the initial issuance of a subpoena and the decision on a subsequent motion to quash. Indeed, this Court explicitly recognized that distinction when it observed that, while Defendants had "made a valid *request*" for issuance of the subpoena, the Court was not ruling on GDC's contentions as to Rule 17(c). ECF No. 24, Ltr. Order on Defs.' Appl., at 5. Evaluation of GDC's contentions prior to issuance of the subpoena, the Court stressed, would have been "premature," and thus the Court plainly did not "address or opine on" any of GDC's contentions, instead directing the Firm to "produce the responsive documents and/or file the appropriate motion(s)." *Id.* The opposition briefs ignore those portions of the Letter Order, as though Defendants could simply wish them away.

It is nonsense to say that the Court "already" decided the motion to quash *before* GDC filed it. That notion certainly cannot be reconciled with the Court's order, which explicitly and logically distinguished the validity of the request from the validity of the subpoena. Defendants' notion also would lead to the absurdity that no subpoena could *ever* be challenged as deficient under Rule 17(c), because mere issuance would be taken to signify that the subpoena's compatibility with the rule "already" had been decided. That is not the law: Courts applying Third Circuit precedent routinely quash issued subpoenas as "unreasonable or oppressive." Fed. R. Crim. P. 17(c)(2); *see United States v. Onyenso*, No. 12-cr-602, 2013 WL 5322651, at *1, 3 (D.N.J. Sept. 20, 2013); *see also United States v. Kubini*, No. 11-cr-14, 2013 WL 5963392, at *1-3 (W.D. Pa. Nov. 7, 2013); *United States v. Krall*, No. 07-cr-607-01, 2009 WL 2394288, at *5-6 (E.D. Pa. Aug. 4, 2009).

### B. The Subpoena's First Demand Is Not At Issue In The Motion Because Nonparty GDC's Production Of The Interview Memoranda Responded To That Demand In Full.

Defendants err in contending at length (Joint Opp'n 2-14; Baroni Opp'n 4-9) that the subpoena's first demand, for interview notes, transcripts, and recordings of the GDC interviews, is at issue in this motion.  GDC responded in full to the subpoena's first demand when GDC produced the interview memoranda and clearly explained that nothing else existed responsive to that demand.  In particular, through the sworn declaration, GDC established that "no documents exist responsive to [that demand], other than the 75 interview memoranda produced."  ECF No. 28-2, Southwell Decl. ¶ 16.  While Defendants may "unequivocally disagree [with] and vehemently challenge" that fact (Joint Opp'n 7), they utterly fail to controvert that fact by submitting to the Court *any* contrary fact, or by producing any other evidence in support of their spurious allegations.

Unable to controvert the facts in the record, Defendants resort to outrageous rhetoric and twisting the wording of the declaration.  In particular, they contend that GDC's explanation concerning the subpoena's *second* demand—namely, that "[t]he metadata associated with the interview memoranda does not contain the contents of any versions of the interview memoranda," Southwell Decl. ¶ 15—must mean that "multiple versions of the summaries were created" (Joint Opp'n 8; *see* Baroni Opp'n 4) and are responsive to the *first* demand.  This strained effort to insinuate the occurrence of misconduct based on use of the term "versions" is unsupported by any fact and is thus baseless.

Defendants' position cannot be reconciled with the facts in the record.  Through the declaration, GDC authenticated its pre-motion correspondence with this Court, *see* Southwell Decl. ¶¶ 2-3 & Exs. A-B, and then fully explained:

> As GDC has explained in correspondence with the District Court, "[u]nder our protocol and practice for this investigation, witness interviews were summarized electronically by one attorney while the interviews were being conducted and then edited electronically into a single, final version. Those final interview memoranda were then printed and ultimately released publicly." Exhibit A, at 5.
>
> As further explained to the Court: "We produced interview memoranda that we created, finalized and then released publicly." Exhibit B, at 1.

*Id.* ¶¶ 13-14.  This testimony swears to the truth of the statements quoted from the correspondence.  Defendants are thus wrong in asserting (Joint Opp'n 7 n.2) that the declaration is missing "a declaration that the quoted language [from the pre-motion correspondence] is in fact true and correct," and Defendants are further wrong in asserting that this testimony is "technically just an affirmation" (Joint Opp'n 7 n.2) that the correspondence said what it said.  Defendants' reliance on such meritless assertions is yet another sign of the weakness of their opposition.

The record before the Court demonstrates that there is no continuing dispute as to the subpoena's first demand, and that aspect of the case is moot.  *See United States v. Nektalov*, No. 03-cr-828, 2004 WL 1574721, at *2 (S.D.N.Y. July 14, 2004); *see also United States v. Johnson*, No. 14-cr-412, 2014 WL 6068089, at *7 (N.D. Cal. Nov. 13, 2014); *United States v. Deleon*, No. 12-mj-90069, 2012 WL 4951981, at *2 (D. Kan. Oct. 17, 2012).  Under Article III of the Constitution, the federal courts have no subject-matter jurisdiction to entertain moot controversies.  *See, e.g.*, *Murphy v. Hunt*, 455 U.S. 478, 481-82 (1982) (per curiam); *see also Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006) (federal court cannot dispense, based on mere position of "any party," with "independent obligation to determine whether subject-matter jurisdiction exists").  Defendants' "vehement[]" rhetoric and excessive *ad hominem* assertions (Joint Opp'n 7) cannot sustain their effort to stretch the motion into one concerning the subpoena's first demand.

4

### C. The Second Demand Fails The *Nixon* Test Because The Metadata Sought Is Completely Irrelevant To The Case.

Defendants' meritless argument that the metadata is relevant to the criminal case against them hinges on their assertion that the metadata, which concerns the electronic history and management of the interview memoranda, would assist them in answering numerous questions they purport to have concerning the manner by which attorneys prepared the memoranda. Joint Opp'n 14; Baroni Opp'n 5-6. But their effort to use the Rule 17(c) subpoena as a vehicle for obtaining answers to those questions—which, on their face, veer far away from the case in the Indictment or any plausible defense to that case—exposes the subpoena as a vehicle for obtaining the sort of discovery that at most arguably *might* be available in a civil action (*but see* ECF No. 28-1, Opening Br. 12 n.7), but which is entirely inappropriate in this criminal case. Indeed, Defendants do not draw analogy to even a single Rule 17(c) case authorizing discovery of a nonparty's metadata.

Quite to the contrary, the law is clear that Rule 17(c) subpoenas driven by "an impermissible discovery motive," including Defendants' subpoena, are properly quashed because they attempt an "end run around *Nixon*." *Amirnazmi*, 645 F.3d at 595; *see United States v. Cuthbertson*, 630 F.2d 139, 146 (3d Cir. 1980) ("*Cuthbertson I*") ("Courts must be careful that [R]ule 17(c) is *not turned into a broad discovery device*, thereby undercutting the strict limitation of discovery in criminal cases found in [Rule] 16.") (emphasis added).[1]

---

[1] A "general 'fishing expedition' that attempts to use [Rule 17(c)] as a discovery device" is forbidden. *Cuthbertson I*, 630 F.2d at 144. Thus, contrary to Defendants' contention (Joint Opp'n 3), courts have long recognized that civil and criminal discovery are vastly different areas. *See, e.g., United States v. Marchisio*, 344 F.2d 653, 669 (2d Cir. 1965) ("Unlike the rule in civil actions, a subpoena *duces tecum* in a criminal action is not intended for the purpose of discovery; the document sought must at that time meet the tests of relevancy and admissibility."); *see also United States v. Ramos*, 27 F.3d 65, 67-68 (3d Cir. 1994) ("Criminal pretrial discovery is, of course, vastly different from discovery in civil cases.");

5

When efforts to discover metadata are concerned, the Third Circuit applies the general rule distinguishing civil and criminal discovery with full force. *See United States v. Hobbs*, 612 F. App'x 94, 97 n.3 (3d Cir. 2015) (rejecting criminal defendant's argument for compelled production of metadata under Fed. R. Civ. P. 34 because that civil rule "*has no relevance in this criminal proceeding*, especially since the question is whether [the defendant] sufficiently established that the metadata was discoverable in the first place") (emphasis added). That clear teaching disposes of the assorted civil "e-discovery" materials on which Defendants rely.

Defendants further contend (Joint Opp'n 17) that because they would purportedly be entitled to obtain testimony from an agent of the Federal Bureau of Investigation ("FBI") if the agent prepared an inaccurate record of an FBI interview using form FD-302, Defendants have a parallel "right to subpoena and confront the actual author of the [GDC] interview summaries if a dispute arises at trial." *Nonsense*. GDC is not the FBI, but rather is a nonparty law firm that conducted an investigation entirely separate from the investigation by the United States which gave rise to the Indictment. The Government's case at trial against Defendants accordingly will be built on, among other things, the work of federal agents, and not the work of GDC attorneys. Even assuming that Defendants have certain rights as to *FBI* FD-302s and the *FBI* agents who prepare them, such rights cannot be construed to extend to the metadata associated with the *GDC* interview memoranda. Additionally, the interview memoranda identify on their face the attorneys who conducted the interviews (Opening Br. 13), and metadata is not necessary for any such identification. Defendants' announcement (Joint Opp'n 18) that they anticipate directing testimonial subpoenas to these individual GDC attorneys is meaningless posturing.

---

*cf. United States v. Burger*, 773 F. Supp. 1419, 1425 (D. Kan. 1991) (under Rule 17(c), "[t]he documents sought cannot be *potentially* relevant or admissible, they must meet the test of relevancy and admissibility at the time they are sought") (emphasis added).

6

Also mistaken is Defendants' contention (Joint Opp'n 17-18) that because two of the witnesses GDC interviewed took issue with a few phrases contained in the interview memoranda, that limited observation supports an inference that there are additional discrepancies in the interview memoranda somehow making the metadata relevant to the trial.  That is sheer speculation—GDC knows of no such discrepancies—and such speculation cannot support the subpoena, because the metadata does not reveal anything substantive.  "[M]ore is needed to sustain a subpoena than the defendant's own subjective belief (i.e. hope) that he or she may find something useful by casting a subpoena upon the waters."  *United States v. Einsenhart*, 43 F. App'x 500, 505 (3d Cir. 2002) (citing *Cuthbertson I*, 630 F.2d at 146).

And, in any event, if such a discrepancy were to arise at trial between the testimony of a witness and the corresponding interview memorandum, allowing Defendants to "confront" (Joint Opp'n 17-18) a GDC attorney as to what the witness said when GDC interviewed that witness would, among other problems, invite the jury to consider impermissible hearsay.  The Third Circuit has directed courts to avoid such a sideshow into hearsay by directing that materials that are "simply hearsay," the only theoretical use for which is "for purposes of impeachment," are not properly "obtained" pretrial under Rule 17(c).  *United States v. Cuthbertson*, 651 F.2d 189, 195 (3d Cir. 1981) ("*Cuthbertson II*"); *see Onyenso*, 2013 WL 5322651, at *2-3 (quashing subpoena given "clear" precedent "that Rule 17(c) subpoenas may not be used to uncover materials sought solely for impeachment purposes"); *see also United States v. Crews*, No. 10-cr-663-4, 2012 WL 93176, at *4 (E.D. Pa. Jan. 12, 2012) ("material [defendant] can use to impeach government witnesses . . . . which is not admissible for any evidentiary purpose prior to trial, is not ordinarily subject to pre-trial subpoena under Rule 17") (quoting *United States v. Tillman*, No. 08-cr-254, 2009 WL 3401721, at *1 (W.D. Pa. Oct. 20, 2009) (internal quotation marks

7

omitted), and citing *United States v. Merlino*, No. 99-cr-363, 2001 WL 283165, at *6-7 (E.D. Pa. Mar. 19, 2001)). Defendants' complete failure to address the hearsay problem inherent in their rationale demonstrates that their argument for the relevance of the metadata demanded cannot be squared with binding precedent disallowing Rule 17(c) subpoenas predicated on theoretical impeachment use.

At any rate, as explained (Opening Br. 13-15 & n.8), even if the metadata were somehow deemed relevant (contrary to Third Circuit precedent), it independently would be properly excluded under Federal Rule of Evidence 403 because of its disproportionate risk of confusing the jury. *See United States v. Georgiou*, No. 09-cr-88, 2009 WL 2973035, at *3-4 (E.D. Pa. Sept. 16, 2009); *see also United States v. Nelson*, No. 10-cr-414, 2011 WL 2207584, at *5-6 (S.D.N.Y. June 3, 2011); *United States v. Dupree*, No. 10-cr-627, 2011 WL 2006295, at *4 (E.D.N.Y. May 23, 2011); *United States v. Mason*, No. 05-cr-324, 2008 WL 1909115, at *2 (D. Ore. Apr. 25, 2008). Defendants have all but conceded as much by failing altogether to address Rule 403.

### D. Rule 16 Does Not Apply Here, And Defendants Fail To Satisfy It In Any Event.

Defendant Baroni fares no better in insisting (in an argument Defendant Kelly does not join) that Federal Rule of Criminal Procedure 16 affords an alternative ground for sustaining the subpoena. Baroni Opp'n 7-9. Rule 16 specifies reciprocal obligations of the prosecution and the defense, not nonparties such as GDC, and Baroni's invocation now of Rule 16 as to a subpoena under Rule 17(c) is erroneous and comes too late. *Cf. United States v. Stein*, 488 F. Supp. 2d 350, 356 (S.D.N.Y. 2007) (reaching Rule 16 contention where Government did not object to court's treating defendants as having sought Rule 16 subpoena paralleling Rule 17 subpoena directed to nonparty). In any event, even if the Rule 16 standard were somehow brought to bear,

8

Defendants cannot satisfy it, given that Rule 16(a)(1)(E) requires federal prosecutors to disclose specified items, including documents and data "within the government's possession, custody, or control," where the "item is material to preparing the defense."[2]

*First*, other than assert in conclusory fashion that the metadata is material (Baroni Opp'n 7 n.2), Baroni does not even attempt to grapple with the materiality requirement. "[M]ateriality means more than that the evidence in question bears some abstract logical relationship to the issues in the case. There must be some indication that pretrial disclosure of the disputed evidence would have enabled the defendant *significantly* to alter the quantum of proof *in his favor*." *United States v. Lacerda*, No. 12-cr-303, 2013 WL 3177814, at *18 (D.N.J. June 19, 2013) (citing, *inter alia*, *United States v. Maniktala*, 934 F.2d 25, 28 (2d Cir. 1991)) (emphases added). Baroni offers no evidence that the metadata "favor[s]" him, let alone that it favors him with anything approaching significance for his defense against the charges in the Indictment.

*Second*, the metadata is not within the Government's "possession, custody, or control." In contending otherwise, Baroni relies on an inapt comparison to *United States v. Stein*, 488 F. Supp. 2d 350 (S.D.N.Y. 2007). Unlike the nonparty corporation whose records the court in *Stein* held were within the Government's legal "control" based on enumerated provisions of a deferred prosecution agreement, GDC is not party to any similar contractual

---

[2] The two other branches of Rule 16(a)(1)(E) are plainly inapplicable here, as there is no reason to conclude "the government intends to use" any of GDC's materials "in its case-in-chief at trial," and the metadata demanded obviously was not "obtained from" any defendant. Fed. R. Crim. P. 16(a)(1)(E)(ii), (iii).

9

agreement with the prosecution, such that "control" of GDC's internal metadata or other records could be attributed to the Government. *See id.* at 353-54, 360-64, 367.[3]

### E. In The Alternative, The Work-Product Doctrine Protects The Law Firm Metadata Demanded.

Although there is no need to reach the argument because the subpoena's second demand utterly fails to satisfy Rule 17(c) requirements, that demand for metadata should in the alternative be quashed under the work-product doctrine. Opening Br. 15-18. Defendants do not even attempt to argue that the work-product doctrine does not protect the metadata, which concerns the electronic history and management of a law firm's interview memoranda. They instead reiterate their baseless contention that the work-product doctrine has been waived (Joint Opp'n 20-23), conflating (*i*) *selective* waiver, which cannot possibly be at issue here because neither GDC nor its client has any adversary in the litigation from which this subpoena dispute arises, and (*ii*) *partial* waiver, which is at issue here, because the release of the interview memoranda was an extrajudicial disclosure that did not forfeit the protection for any work

---

[3] There is no merit to Defendants' throwaway suggestion that the Court should countenance additional drain on judicial and litigant resources by ordering further proceedings rather than quash the defective subpoena outright. Contrary to Baroni's contention (Baroni Opp'n 6), there is no ground for appointing an expert under Federal Rule of Evidence 706(a). The "policy behind" that rule is "to promote the jury's factfinding ability," and, in a civil case, it is not an abuse of discretion to "declin[e] to appoint an independent expert solely to benefit a party who has otherwise failed to gather such evidence as would suffice to overcome summary judgment." *Ford v. Mercer Cty. Corr. Ctr.*, 171 F. App'x 416, 420 (3d Cir. 2006) (citation omitted). Submitting only speculation rather than facts and pointing to no concrete connection between the metadata and the charges against them, Defendants likewise have no entitlement to a court-appointed expert to aid them in their "fishing expedition to see what may turn up." *Bowman Dairy Co. v. United States*, 341 U.S. 214, 221 (1951). And Defendants are further mistaken in suggesting (Joint Opp'n 19) that the Court should compensate for the deficiencies in their subpoena by undertaking burdensome *in camera* proceedings. *See Krall*, 2009 WL 2394288, at *5; *cf. United States v. Zolin*, 491 U.S. 554, 568-69, 571 (1989) (recognizing "burdens" *in camera* review "places upon the district courts").

product not disclosed.  The Third Circuit sharply distinguished selective waiver and partial waiver in *Westinghouse Electric Corporation v. Republic of the Philippines*, 951 F.2d 1414, 1423 n.7, 1426 n.12 (3d Cir. 1991); *see also In re Von Bulow*, 828 F.2d 94, 102 (2d Cir. 1987). By completely failing to address partial waiver, Defendants have conceded that their waiver argument ignores governing law.

Dated:  October 7, 2015
New York, New York

      Respectfully submitted,
      GIBSON, DUNN & CRUTCHER LLP

      /s/ Randy M. Mastro

      GIBSON, DUNN & CRUTCHER LLP
      Randy M. Mastro
      Alexander H. Southwell (admitted *pro hac vice*)
      200 Park Avenue
      New York, NY  10166-0193
      Phone: (212) 351-3825
      Fax: (212) 351-5219
      E-mail: RMastro@gibsondunn.com

      *Attorneys for Nonparty Gibson, Dunn & Crutcher LLP*