

U.S. Department of Justice

*United States Attorney*
*District of New Jersey*
*Special Prosecutions Division*

---

970 Broad Street, Suite 700　　　　　　　　　　(973) 645-2700
Newark, New Jersey 07102

February 3, 2016

**VIA ECF**

Honorable Susan D. Wigenton
United States District Judge
Martin Luther King Building
& U.S. Courthouse
50 Walnut Street
Newark, NJ 07101

　　　　Re:　*United States v. William E. Baroni, Jr. and Bridget Anne Kelly*
　　　　　　Crim. No. 15-193 (SDW)

Dear Judge Wigenton:

　　　The Government would like to call the Court's attention to the enclosed recent decision that issued after Defendants' discovery motions were fully briefed.

　　　In *United States v. McGill*, Crim. No. 12-112, 2016 WL 48214 (E.D. Pa. Jan. 5, 2016), the defendant, who characterized the voluminous discovery in that case as a "document dump," sought an order directing prosecutors to review the discovery and identify materials potentially relevant to the defense. *Id.* at *9. Senior District Judge Eduardo C. Robreno denied the defendant's motion, citing Third Circuit precedent for the proposition that *Brady* is a rule of disclosure but " 'impose[s] no additional duty on the prosecution team members to ferret out any potentially defense-favorable information from materials that are so disclosed.' " *Id.* (quoting *United States v. Pelullo*, 399 F.3d 197, 212 (3d Cir. 2005)). *McGill* thus supports the argument advanced at pages 6-12 of the Government's brief in opposition to Defendants' discovery motions. *See* Dkt. #45.

　　　　　　　　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　PAUL J. FISHMAN
　　　　　　　　　　　　　　　　　　United States Attorney

           By: /s/Lee M. Cortes, Jr.
              Lee M. Cortes, Jr.
              Vikas Khanna
              David W. Feder
              Assistant U.S. Attorneys

Enclosure

cc: Michael Baldassare, Esq. (*via ECF*)
   Michael Critchley, Esq. (*via ECF*)

2016 WL 48214
Only the Westlaw citation is currently available.
United States District Court,
E.D. Pennsylvania.

United States of America
v.
[Patricia McGill.](#)

CRIMINAL ACTION No. 12-112-01
|
Signed 01/05/2016

**Attorneys and Law Firms**

[Suzanne B. Ercole](#), U.S. Attorney's Office, Margaret M. Vierbuchen, U.S. Attorney's Office, Philadelphia, PA, for United States of America.

[Robert N. Deluca](#), Devon, PA, for Patricia McGill.

### MEMORANDUM

[EDUARDO C. ROBRENO](#), J.

I. BACKGROUND...——
A. Factual Background...——

B. Essential Elements of the Offense...——

II. PROCEDURAL HISTORY...——

III. PENDING MOTIONS...——
A. Government's Pending Motions...——

    1. Motion to Permit the Jury to Use a Redacted Indictment During Deliberations (ECF No. 251)...——

B. Defendant's Pending Motions...——

1. Motion in Limine to Hold a Hearing to Determine Admissibility of Alleged Co-conspirators' Statements and Establish the Order of Proof to Prove a Conspiracy (ECF No. 356)...——

2. Motion in Limine to Bar Inflammatory Language (ECF No. 357)...——

3. Motion in Limine for Disclosure of Forged or Altered Documents and a Bill of Particulars (ECF No. 358)...——

4. Motion in Limine to Specifically Disclose Brady and Giglio Material (ECF No. 359)...——

5. Motion in Limine to Exclude Peer Comparison Data and Estimate Evidence (ECF No. 361)...——

6. Motion in Limine to Strike the Indictment as Time-Barred or in the Alternative to Amend the Indictment to Conform to the Statute of Limitations and Bar Evidence Outside the Statute of Limitations (ECF No. 367)...——

C. Remaining Motions...——

IV. CONCLUSION...——

**\*1** The trial of this matter is scheduled to begin on January 7, 2016. Before the Court are several motions in limine and other pretrial motions. Namely, the Government has filed a motion to permit the jury to use a redacted indictment during deliberations, ECF No. 251; a motion to admit tape recordings and transcripts, ECF No. 306, as amended, ECF No. 371; a motion in limine for a determination that exhibits are business records under [Federal Rule of Evidence 803(6)](#) and that summaries of business records are admissible pursuant to [Federal Rule of Evidence 1006](#), ECF No. 307; and a motion in limine to preclude assertion of a public authority defense or an entrapment by estoppel defense, ECF No. 381. Defendant has filed a motion in limine to hold a hearing to determine admissibility of alleged co-conspirators' statements and establish the order of proof to prove a conspiracy, ECF No. 356; a motion in limine to bar inflammatory language, ECF No. 357; a motion in limine for disclosure of forged or altered documents and a bill of particulars, ECF No. 358; a motion to specifically disclose [Brady](#) and [Giglio](#) material within the hundreds and thousands of documents and hundreds of hours of tape recordings produced in discovery, ECF No. 359; a motion in limine to bar introduction of peer comparison and estimate evidence, ECF No. 361; a motion in limine to strike the indictment as time-barred or in the alternative to amend the indictment to conform to the statute of limitations and bar evidence outside the statute of limitations, ECF No. 367; a motion to compel discovery, ECF No. 369; and a motion to dismiss Counts 2-14 of the Indictment as violative of due process rights under the void for vagueness doctrine, or in the alternative a motion in limine to properly define the hospice regulation to the jury, ECF No. 380.

# I. BACKGROUND

## A. Factual Background [1]

[1] The facts are generally taken from the Indictment. See Indictment, ECF No. 1.

On March 21, 2012, Defendant Patricia McGill was charged by indictment with conspiring to commit health care fraud under 18 U.S.C. § 1349 (Count One) and substantive counts of health care fraud in violation of 18 U.S.C. § 1347 (Counts Two through Fourteen). A summary of the events leading to the indictment is as follows:

**\*2** Home Care Hospice, Inc. ("HCH"), a for-profit hospice provider, was incorporated in 1999 under the laws of the Commonwealth of Pennsylvania. HCH was in the business of providing hospice services for patients at nursing homes, hospitals, and private residences. HCH received Medicare, Medicaid, and private insurance reimbursement for providing home care and in-facility care to purportedly terminally ill patients with life expectancy prognoses of six months or less.

Defendant McGill, a registered nurse, was employed at HCH and served as its Director of Nursing and Clinical Services commencing in or about 2005. She was responsible for planning, implementing, and evaluating HCH's hospice services in accordance with local, state, and federal regulations. Defendant McGill also supervised clinical nursing staff, and in that role, she was responsible for reviewing staff documentation and patient charts to assure quality and appropriateness for hospice service and maintaining records of patient visits.

Defendant McGill was charged with knowingly authorizing the admission and maintenance of ineligible patients for hospice services, resulting in fraudulent health care insurance claims submitted by HCH totaling approximately $9,328,000, and authorizing HCH staff to falsely document more costly levels of hospice services, resulting in fraudulent claims totaling approximately $325,000.

## B. Essential Elements of the Offense

To establish a violation of 18 U.S.C. § 1349, the Government must prove beyond a reasonable doubt:

(1) the existence of an agreement between two or more persons to commit health care fraud, in violation of 18 U.S.C. § 1347;

(2) that the defendant was a party to that agreement; and

(3) that the defendant joined the agreement or conspiracy knowing that its objective was to commit health care fraud and intending to join with at least one other alleged conspirator to achieve that objective.

"Health care fraud"--the object of the conspiracy--is criminalized by 18 U.S.C. § 1347, which provides in relevant part that:

Whoever knowingly and willfully executes, or attempts to execute, a scheme or artifice:

(1) to defraud any health care benefit program; or

(2) to obtain, by means of false or fraudulent pretenses, representations, or promises, any of the money or property owned by, or under the custody or control of, any health care benefit program, in connection with the delivery of or payment for health care benefits, items, or services, [shall be guilty of a crime.]

A "health care benefit program" is defined as "any public or private plan or contract, affecting commerce, under which any medical benefit, item, or service is provided to any individual, and includes any individual or entity who is providing a medical benefit, item, or service for which payment may be made under the plan or contract. 18 U.S.C. § 24(b)".

## II. PROCEDURAL HISTORY

On March 21, 2012, Defendant Patricia McGill was charged by indictment. Fifteen other defendants charged with various levels of involvement in the same healthcare fraud scheme previously entered guilty pleas or have been convicted at trial. Defendant McGill is the only remaining defendant. The delay in Defendant McGill's trial was due, in large part, to the fact that she challenged her competency to stand trial. The Court continued the trial on several occasions to allow for medical evaluations of Defendant, an evidentiary hearing, and briefing on the issue. Ultimately, on August 18, 2015, Defendant McGill was found competent to stand trial.

**\*3** Trial of this matter was previously scheduled to begin on September 1, 2015. However, immediately prior to the start of jury selection, Defendant's counsel made an oral motion for the Court to accept a nolo contendere plea or Alford plea. See Scheduling Order, ECF No. 323. Specifically, defense counsel explained that Defendant McGill was willing to admit

that she aided and abetted the commission of the health care fraud charges set forth in Counts Two through Fourteen of the indictment, but she refused to admit that she conspired to commit health care fraud as charged in Count One. Based on this turn of events, the Court continued the trial, and ordered the parties to submit written briefs as to whether the Court should accept a nolo contendere plea or Alford plea under the circumstances of this case. See Scheduling Order (ECF No. 323). A hearing on the issue was held on September 9, 2015, and the Court rejected Plaintiff's proffered nolo contendere or Alford plea, concluding that acceptance of such a plea was not in the interests of the public in the effective administration of justice. ECF Nos. 332, 333.

After rejecting Defendant's plea, the Court granted several extensions of the trial date to allow defense counsel additional time to prepare for trial. See ECF No. 330. On October 23, 2015, the Court issued a Final Scheduling Order, specially listing the case for trial on January 7, 2016. ECF No. 345. In the Final Scheduling Order, the Court stated that it will hear any pending motions in limine, including motions to suppress and any necessary Starks or Daubert motions, upon completion of jury selection. Id.

The Final Scheduling Order also provides that the parties were to file any motions in limine, proposed voir dire, proposed jury instructions, proposed verdict sheets, and trial memoranda by December 16, 2015, with responses to all pretrial motions due on December 23, 2015. Id. In the event a party planned to call an expert at trial, it was to deliver the expert report and curriculum vitae to its opponent at least fourteen days before trial. Id.

The parties have each filed several motions in limine and other dispositive motions, as outlined above. Defendant also recently filed a Notice of Defense, ECF No. 360, which she subsequently amended, ECF No. 378, indicating that she may put on an entrapment defense, including a public authority and estoppel defense. The motions have been fully briefed,[2] and the parties presented arguments on many of these motions during a telephone status conference held on December 18, 2015. During the telephone conference, the Court stated that it would decide certain motions on the papers and that it will hear oral argument on the remaining motions after the completion of jury selection.

[2] There is one exception to this statement. Defendant has not yet responded to the Government's motion in limine to preclude the assertions of a public authority defense or an entrapment by estoppel defense, which was filed on December 23, 2015. ECF No. 381. The Court has asked Defendant to submit a written response to this motion by the end of the day on January 5, 2016.

### III. PENDING MOTIONS

#### A. Government's Pending Motions

##### 1. Motion to Permit the Jury to Use a Redacted Indictment During Deliberations (ECF No. 251)

In its motion to permit the jury to use a redacted indictment during deliberations (ECF No. 231), the Government asserts that the complicated allegations involved in this fourteen-count indictment against Defendant McGill--charges that involve descriptions of the Medicare insurance program and HCH's operations--may make it difficult for the jury to analyze the evidence presented without a copy of those charges as a reference point. The Government argues that providing the jury with a copy of the indictment (redacted to remove specific references to McGill's convicted co-defendants) would aid jurors in connecting the evidence and the Court's instructions to the specific charges that the jury must decide. Thus, the Government requests that the Court provide a copy of the redacted indictment to the jury during its deliberations. The Government contends that Defendant will not be prejudiced by the jury's consideration of the indictment, because the Court may issue an appropriate limiting instruction.

**\*4** Defendant opposes this motion, arguing that providing the jury with a copy of the redacted indictment will prejudice the defense. ECF No. 355. Defendant contends that the indictment "provide[s] a roadmap of the government's case, in the government's language, with the additional imprimatur that some other jury has already found these 'facts.' "Id. at 2. Allowing the jury to see the indictment therefore presents a risk that "the jury would use the government's version and theory of the case as its essential guide to their deliberations."Id. at 1. Defendant further states that the indictment "contains much background material that is not relevant to the charges against Mrs. McGill,"id. at 2, and the appearance of redacted information in the indictment might "lead to speculation about who [the redacted parties] might be and the scope of the charges relating to mysterious people."Id. at 1. Finally, Defendant suggests that the case is not as complicated as the Government represents, so the jury will not necessitate the indictment as a reference: "[T]his is not a multi-defendant trial with complicated fact patterns.

It's a single defendant case with the central question of whether Mrs. McGill participated in fraud against [M]edicare/[M]edicaid for the benefit of her employer." Id. at 2.

The Third Circuit has held that it is within the trial court's discretion to allow the jury to have a copy of the indictment during deliberations, "subject to a limiting instruction that the indictment does not constitute evidence, but is an accusation only." United States v. Todaro, 448 F.2d 64, 66 (3d Cir. 1971), cert. denied, 404 U.S. 1040 (1972). Notes to the Third Circuit Model Criminal Jury Instructions provide that "[i]f the trial judge does allow the jurors to have the indictment, he or she may need to redact it to eliminate any charges that have been dismissed or any irrelevant allegations."Third Circuit Suggested Jury Instructions (Criminal) § 3.07 cmt. (2015). The Court will defer ruling on this motion until the end of the case.

**B. Defendant's Pending Motions**
1. Motion in Limine to Hold a Hearing to DetermineAdmissibility of Alleged Co-conspirators'Statements and Establish the Order of Proof toProve a Conspiracy (ECF No. 356)

In her motion in limine to hold a hearing to determine the admissibility of alleged co-conspirators' statements and establish the order of proof to prove a conspiracy, Defendant seeks to prevent the introduction of co-conspirator statements unless and until the Government independently establishes the existence of a conspiracy by a preponderance of the evidence. ECF No. 356 at 3. Although ordinarily a statement offered against a party is not excludable as hearsay if it is a statement by a co-conspirator made during the course of and in furtherance of the conspiracy under Federal Rule of Evidence 801(d)(2)(E), the Rule is limited to instances where independent evidence links the defendant to the conspiracy and the statement is made during the course of the conspiracy. Id. at 1. Thus, Defendant contends that before a statement may be admitted under this Rule, the trial court must find by a preponderance of the evidence that: (1) a conspiracy existed; (2) the declarant and the defendant were members of the conspiracy; (3) the statement was made in the course of the conspiracy; and (4) the statement was made in furtherance of the conspiracy. Id. at 3 (citing United States v. Ellis, 156 F.3d 493, 496 (3d Cir. 1998)). In essence, Defendant asks the Court to conduct a pretrial hearing regarding the admissibility of co-conspirator statements and to require the Government to provide a summary of the independent evidence it would introduce to establish the existence of a conspiracy in this case.

In response, the Government argues that there is no need for a pretrial hearing to determine the admissibility of co-conspirator statements, because the order of proof is within the discretion of the Court and the Government can present evidence of a conspiracy during the trial. Gov't's Opp. at 8, ECF No. 374. It suggests that this Court has already found ample evidence of a conspiracy in accepting the guilty pleas of several of McGill's co-defendants, and therefore the existence of a conspiracy as alleged in the Indictment is established as law of the case. Id. at 6-7. Such evidence has also been admitted during the trials of several of McGill's co-defendants. Id. at 8. The Government therefore asks that "the Court allow the government to put on its case in a logical sequence that will make sense to the jury, and conditionally admit coconspirator statements."Id.

*5  A co-conspirator statement may be admitted as an exception to the hearsay rule under Federal Rule of Evidence 801(d)(2)(E) if it meets three conditions: (1) there must be independent evidence establishing the existence of the conspiracy and connecting the declarant and the defendant to it; (2) the statement must have been made in furtherance of the conspiracy; and (3) the statement must have been made during the course of the conspiracy. United States v. Ammar, 714 F.2d 238, 245 (3d Cir. 1983).

The Third Circuit has held that as a prerequisite for the submission of co-conspirator statements to the jury, the court must determine that the government has "established the existence of the alleged conspiracy and the connection of each defendant with it by a clear preponderance of the evidence independent of the hearsay declarations."United States v. Cont'l Grp., Inc., 603 F.2d 444, 457 (3d Cir. 1979). This determination is to be made by the court before the co-conspirator statements are submitted to the jury and is governed by Federal Rule of Evidence 104(a).Ammar, 714 F.2d at 245, 247 n.5. The proponent of the co-conspirator statements must prove by a "clear preponderance of the evidence" that a conspiracy existed, the defendant and the declarant were members of the conspiracy, and the declarant "made the statement during the course and in furtherance of the conspiracy."Id. at 246. The co-conspirator statements sought to be admitted under Rule 801(d)(2)(E) are not in and of themselves sufficient proof of "the existence of the conspiracy and the participation therein of the declarant and the party against whom the statement is offered" but may be

used as evidence of such facts. United States v. Gambino, 728 F. Supp. 1150, 1153-54 (E.D. Pa. 1989).

Defendant seems to rely on United States v. James, in which the Fifth Circuit expressed its preference for requiring the government to establish the existence of the conspiracy and each defendant's participation therein by independent evidence before admitting any co-conspirator statement. 590 F.2d 575, 581-82 (5th Cir. 1979), overruled on other grounds byUnited States v. Martinez-Perez, 941 F.2d 295 (5th Cir. 1991). The Third Circuit, however, has taken a different approach, emphasizing that "the control of the order of proof at trial is a matter committed to the discretion of the trial judge."Ammar, 714 F.2d at 246 (quoting Cont'l Grp., 603 F.2d at 456). For instance, in Continental Group, the district court permitted the government to introduce co-conspirator statements without making a prior showing of conspiracy based on independent evidence, subject to the requirement that the government make such a showing by the close of its case--a practice which the Third Circuit held was not an abuse of discretion. 603 F.2d at 457.

Still, the Third Circuit has "counseled that the practice of admitting co-conspirator hearsay statements subject to later connection 'be carefully considered and sparingly utilized by the district courts."'United States v. Gambino, 926 F.2d 1355, 1360 (3d Cir. 1991) (quoting Cont'l Grp., 603 F.2d at 457). After all, "[t]here is a danger that if hearsay statements of an alleged co-conspirator are admitted subject to later connection, the court may determine at the close of evidence that the offering party did not meet its burden of establishing a conspiracy and the jury would be irremediably prejudiced."Id.

 *6  At the same time, however, the Third Circuit has recognized that "the order-of-proof problem confronting the trial judge is a particularly difficult one where the government is attempting to prove the participation of multiple defendants in a continuing conspiracy."Id. (quoting Cont'l Grp., 603 F.3d at 456). Where there was a "large amount of interrelated testimony to be considered" and "alternative approaches may have been unduly complex and confusing to the jury or to the court," the Third Circuit has upheld the district court's decision to admit co-conspirator hearsay subject to later connection. Cont'lGroup, 603 F.2d at 457. In a more recent nonprecedential case, the Third Circuit stated that "[t]he court may conditionally admit evidence under Rule 801(d)(2)(E), provided the government makes the necessary showing by the close of its case."United States v. Onyenso, 615 F. App'x 734, 737 (3d Cir. 2015) (nonprecedential) (emphasis in original).

Here, a pretrial hearing seems unnecessary and burdensome. The Government's evidence of conspiracy seems to consist of a significant amount of interrelated testimony and other proofs, including recorded conversations. Therefore, the conspiracy will likely be clearly defined only after the testimony of several witnesses and presentation of various proofs. Since McGill's co-defendants charged with participation in the conspiracy were previously found guilty after trial or pled guilty, the Government has previously established the existence of the conspiracy based on the facts of this case. Accordingly, the Court finds that the Government has made a prima facie showing of the existence of a conspiracy, and the Court need not be overly concerned, under the circumstances of the case, about the danger of irremediable prejudice to the jury if the Government does not meet its burden of establishing the conspiracy. The Court will therefore deny Defendant's motion in limine to hold a hearing to determine admissibility of alleged co-conspirators' statements and establish the order of proof to prove a conspiracy.

### 2. Motion in Limine to Bar Inflammatory Language (ECF No. 357)

Defendant McGill next moves to bar the Government from using inflammatory language during the trial, which she claims the Government has used repeatedly in reference to other HCH fraud cases involving her co-defendants. ECF No. 357 at 1. She points to examples of "inflammatory language" in Government press releases, including such phrases as "kickback scheme" and "multi-million dollar health care fraud" and descriptions of the scheme as one in which participants "falsely claimed and received millions of taxpayer dollars intended for dying Medicare recipients in need of hospice care."Id. Defendant claims this language is not relevant to her, because she did not receive any money as kickbacks. Unlike HCH's owners, McGill was a salaried employee who did not receive any sort of bonus or under-the-table compensation. Id.

In its response, the Government states that information regarding payments made in the course of and in furtherance of the conspiracy must be presented at trial, because the Government is required to present evidence of the loss to Medicare to meet its burden of proof. Gov't's Opp. at 3, 5,

ECF No. 373. The Government notes that under Federal Rule of Evidence 403 "[r]elevant evidence may be excluded only if its probative value is <u>substantially outweighed</u> by a danger of unfair prejudice." Id. at 5 (emphasis in original).

Although Defendant has not provided a legal basis for the exclusion of the "inflammatory" statements, her argument seems to implicate Federal Rule of Evidence 403. Rule 403 provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. "Evidence should be excluded under Rule 403 only sparingly since the evidence excluded is concededly probative," and the balance "should be struck in favor of admissibility." Spain v. Gallegos, 26 F.3d 439, 453 (3d Cir. 1994). In determining the probative value of evidence under Rule 403, the court "must consider not only the extent to which it tends to demonstrate the proposition which it has been admitted to prove, but also the extent to which that proposition was directly at issue in the case." United States v. Herman, 589 F.2d 1191, 1198 (3d Cir. 1978), cert. denied, 441 U.S. 913 (1979).

*7 In In re Paoli Railroad Yard PCB Litigation, the Third Circuit "stress[ed] that pretrial Rule 403 exclusions should rarely be granted." 916 F.2d 829, 859 (3d Cir. 1990) (emphasis in original). The Third Circuit specifically instructed that

> [e]xcluding evidence as being more prejudicial than probative at the pretrial stage is an extreme measure that is rarely necessary, because no harm is done by admitting it at that stage....However, a court cannot fairly ascertain the potential relevance of evidence for Rule 403 purposes until it has a full record relevant to the putatively objectionable evidence. We believe that Rule 403 is a trial-oriented rule. Precipitous Rule 403 determinations, before the challenging party has had an opportunity to develop the record, are therefore unfair and improper.

Id.

Accordingly, the Court will deny this motion with the caveat that Defendant may object to a particular characterization by the Government during the trial, and the Court will rule on the admissibility of the statement at that time. The statements that McGill points to here seem to be matters of argument and strategy, and depending on the nature of the defense that McGill puts on at trial, such statements may not present any danger of prejudice to her. (For instance, if McGill does not deny the existence of a conspiracy but rather denies only her participation in such a conspiracy, statements that the conspiracy was a "multi-million dollar health care fraud" scheme would be unlikely to prejudice her.)

### 3. <u>Motion in Limine for Disclosure of Forged or Altered Documents and a Bill of Particulars (ECF No. 358)</u>

Defendant also seeks a bill of particulars outlining the Medicare claims that form the basis of the thirteen substantive counts charged against McGill and what information in each document is alleged to be false. ECF No. 358 at 1. Defendant states that despite numerous requests, the Government has not informed defense counsel which claims or parts of claims are false. Id. Defendant therefore demands a "detailed accounting of all the claims that are alleged to be false, why they are false, how they are false, how they were billed--and payments made." Id. Defendant also argues that the evidence admitted at trial should be limited to the thirteen counts against McGill, instead of the thousands of patient records provided by the Government as discovery. Id.

The Government opposes Defendant's motion. ECF No. 377. It argues that "[r]ather than a request for a more specific statement of the charges, McGill's request is an impermissible request that the government identify and explain its evidence in advance of trial." Id. at 6. The Government states that a bill of particulars is not necessary here, because the Indictment contains a detailed statement of the allegedly unlawful conduct and the Government has turned over extensive discovery. Id. Specifically, the Government has provided statements of HCH nurses responsible for the provision of hospice care, who will testify about inappropriate patients on HCH patient rosters, creation of false medical records, and alteration of patient charges. Id. The Government has also provided the patient charts for subject patients, as well as summary charts identifying the allegedly fraudulent claims. Id. at 7. Finally, the Government points to an affidavit prepared by FBI Special Agent E. Edward Conway that describes the facts and evidence supporting the Government's

case against McGill in significant detail. Gov't's Opp. Ex. C, Conway Aff., ECF No. 377 at 39-54.

*8 Under Federal Rule of Criminal Procedure 7(f), the court may direct the government to file a bill of particulars or a defendant may move for a bill of particulars. Whether to grant a bill of particulars lies in the discretion of the trial court. United States v. Armocida, 515 F.2d 49, 54 (3d Cir. 1975). "The purpose of the bill of particulars is to inform the defendant of the nature of the charges brought against him to adequately prepare his defense, to avoid surprise during the trial and to protect him against a second prosecution for an inadequately described offense." United States v. Addonizio, 451 F.2d 49, 63-64 (3d Cir. 1971).

A bill of particulars is "more akin to the functions of an indictment than to discovery," United States v. Smith, 776 F.2d 1104, 1111 (3d Cir. 1985), in that its function is to supplement the pleading requirements applicable to the indictment "when the indictment itself is too vague and indefinite for such purposes," Addonizio, 451 F.2d at 64; see also United States v. Moyer, 674 F.3d 192, 203 (3d Cir. 2012) ("For an indictment to be sufficient, it must contain all the elements of a crime and adequately apprise the defendant of what he must be prepared to meet."). Accordingly, a bill of particulars is "not a vehicle for the defendant to obtain wholesale discovery of the government's evidence of theories." United States v. Ligambi, No. 09-0496, 2012 WL 2362638, at *2 (E.D. Pa. June 21, 2012) (citing United States v. Eufrasio, 935 F.2d 553, 575 (3d Cir. 1991); Smith, 776 F.2d at 1111; Addonizio, 451 F.2d at 64). "Rather, it is intended to give the defendant only that minimum amount of information necessary to permit the defendant to conduct his own investigation." Smith, 776 F.2d at 1111.

As with an indictment, a bill of particulars serves to set the parameters of the government's case, such that "there can be no variance between the notice given in a bill of particulars and the evidence at trial." Smith, 776 F.2d at 1111. As such, with respect to the decision whether to grant a bill of particulars

> [t]rial judges must be allowed to exercise broad discretion in order to strike a prudent balance between the defendant's legitimate interest in securing information concerning the government's case and numerous countervailing considerations ranging from the personal security of witnesses to the unfairness that can result from forcing the government to commit itself to a specific version of the facts before it is in a position to do so.

United States v. Rosa, 891 F.2d 1063, 1066 (3d Cir. 1989).

An indictment is sufficient and obviates the need for a bill of particulars when "it substantially follows the language of the criminal statute, provided that its generality does not prejudice a defendant in preparing his defense nor endanger his constitutional guarantee against double jeopardy." Eufrasio, 935 F.2d at 575. Further, when the government supplements a detailed charging document with substantial discovery, the defendant's claim for a bill of particulars is weakened. United States v. Urban, 404 F.3d 754, 772 (3d Cir. 2005).

Here, Defendant confuses the role of the bill of particulars. It is a pleading tool, not as a discovery tool. The Government has maintained an open file policy of discovery in this case, and Defendant is well aware of the evidence that the Government plans to present at trial. Among other things, the affidavit from Agent Conway set forth the Government's evidence against her in detail. Accordingly, the Court will deny Defendant's motion for a bill of particulars.

*9 **4. Motion in Limine to Specifically Disclose Brady and Giglio Material (ECF No. 359)**

Defendant next moves for an order requiring the Government to specifically disclose Brady and Giglio material by production date and Bates number. ECF No. 359 at 3. Specifically, Defendant asks that the Government be required to identify: (1) witness statements favorable to the defense; (2) existence of witnesses favorable to the defense; and (3) negative exculpatory statements, "such as statements by informants that fail to mention the defendant or any eyewitness's inability to identify the defendant, or tapes (in English and Russian) that indicate Mrs. McGill would not approve of what the owners of the company were doing." Id. In addition, Defendant submits that the Government should be required to identify any Giglio material as to witnesses it plans to call at trial. Id. Finally, Defendant would like a list and copies of relevant billing and hospice regulations that she allegedly violated. Id. at 5.

Defendant argues that the Government's "document dump" of the discovery material in this case does not qualify as Brady or Giglio disclosures, because the Government has a duty to affirmatively scour all of the materials to discern what material is exculpatory or impeaching. Id. at 1. Defendant says that exculpatory evidence that is "hidden" within a multitude of documents is "tantamount to nondisclosure." Id. at 4. The "document dump" is unfair and prejudicial, because "[i]t would take the defense a year to read all of the documents and listen to all of the tapes."Id.

The Government suggests that Defendant's request is unfounded and contradicts Brady's disclosure requirements. ECF No. 379 at 1. It says that Defendant is capable of identifying information in the discovery materials supporting her theory of defense and that requiring the Government to direct her to specific Brady material would be impossible given that the Government cannot predict Defendant's trial strategy or defense theory. Id.

The Third Circuit "has made clear that Brady does not compel the government to furnish a defendant with information he already has or, with any reasonable diligence, he can obtain himself."United States v. Pelullo, 399 F.3d 197, 213 (3d Cir. 2005). This Circuit's Brady jurisprudence "permit[s] the government to make information within its control available for inspection by the defense, and impose[s] no additional duty on the prosecution team members to ferret out any potentially defense-favorable information from materials that are so disclosed." Id. at 212. In Pelullo, the Third Circuit found no Brady violation where the government made a warehouse of documents available to the defense without specifying any particular documents that were helpful to the defense, specifically stating that Brady did not obligate it to do so. Id. at 212-13. Other Circuits have taken the same approach. See, e.g., United States v. Mmahat, 106 F.3d 89, 94 (5th Cir. 1997) (where the government gave the defense access to 500,000 pages of documents, no obligation arose under Brady to "point the defense to specific documents within a larger mass of material that it has already turned over") (cited favorably in Pelullo, 399 F.3d at 312); United States v. Parks, 100 F.3d 1300, 1307 (7th Cir. 1996) ("Brady [does not] require[ +] the Government to carry the burden of transcribing [sixty-five hours of intercepted conversations,]" because the defendants "had been given the same opportunity as the government to discover the identified documents" and "information the defendants seek is available to them through the exercise of reasonable diligence.") (cited favorably in Pelullo, 399 F.3d at 312).

*10 Here, although the discovery materials are voluminous, the Government has provided several tools to the defense to assist with the review of these materials. The discovery was provided in a form that could easily be loaded into and searched through an electronic database. In addition, the government has provided a discovery log, the Title III log, and a list of the consensual recordings. Further, the Government made case agents available to the defense to assist during the defense's review. The Government also notes that Defendant McGill is not detained and is available to assist defense counsel in reviewing the documents and audio files. Much of the paper discovery is HCH patient charts, and McGill, as the former Director of Nursing and Clinical Services for HCH, is well-positioned to help her counsel review and make sense of these records. Finally, although Defendant suggests she is the victim of a document "dump" by the Government, Defendant has not alleged any bad faith conduct on the part of the Government in attempting to hide exculpatory material. Cf.Pelullo, 399 F.3d at 213 ("It is equally clear, however, that defense counsel's knowledge of, and access to, evidence may be effectively nullified when a prosecutor misleads the defense into believing the evidence will not be favorable to the defendant."). For instance, Defendant has not alleged that a significant portion of the materials turned over as discovery bear no relevance to this case. Accordingly, the Court will deny Defendant's motion to specifically disclose Brady and Giglio material.

### 5. Motion in Limine to Exclude Peer Comparison Data and Estimate Evidence (ECF No. 361)

Defendant next moves to bar the Government from introducing peer comparison evidence and estimates at trial during testimony from case agents or the Government's designated expert, Jean Stone. ECF No. 361 at 2. Defendant anticipates that the Government will use evidence comparing HCH's Medicare billing with that of its peers over the relevant period of time, based on the theory that "because HCH billings were more than its putative peers, it must be guilty of billing improperly."Id. at 1. Defendant contends that this peer comparison and estimate evidence is highly prejudicial and irrelevant, because McGill was not responsible for billing. Id.

Defendant also states that the Government has estimated that at least thirty percent of the claims that HCH submitted to Medicare during the relevant time period were false. Id.

at 1-2. Defendant has requested information as to how the Government reached that figure to no avail. Id. at 2.

Defendant again argues that the jury must evaluate "each allegedly falsified medical file within which Mrs. McGill is charged, be told who falsified it, how it was false and how Mrs. McGill is linked to that file" and determine "if the patient actually qualified for hospice care or continuous care."Id.

Defense counsel seems to misconstrue how the Government will use the peer comparison and estimate evidence at trial. As the Government explains in its response to Defendant's motion, the incredibly large volume of Medicare Part B claims submitted to Medicare renders the Government and its claims review contractors unable to require and review full documentation for every claim in advance of payment. Gov't's Opp. at 4, ECF No. 375 (citing United States v. Beck, 758 F.2d 1553, 1558 (11th Cir. 1985)). Accordingly, "[a] carrier determines the reasonableness and necessity of services rendered in connection with Medicare Part B claims by comparing a physician's practice to the prevailing practices of similar practitioners in the physician's geographical area" and by developing "utilization profiles" for each medical provider. Beck, 758 F.2d at 1558-59. The "utilization profiles" alert Medicare claims contractors "to the possibility of overutilization of the Medicare program by a [health care provider]," but "it is only when a physician has been given an opportunity to explain why certain services were rendered and the carrier has reviewed the claims individually that a determination can be made as to the reasonableness and necessity for the services."Id.

The Government explains that it will need to present peer comparison and estimate evidence to explain to the jury how it came to suspect and investigate HCH of the fraudulent activity alleged in this case. However, the peer comparison data will not be used by the Government to establish that HCH's claims were fraudulent, as that determination is based on "the claims data and the evidence developed by the FBI, the Health and Human Services Inspector General, and Medicare Safeguard contractors, and the statement of HCH employees and owners."Gov't's Opp. at 4, ECF No. 375.

*11 To the extent that McGill suggests that this evidence is not relevant in her case because she was not responsible for directly submitting claims to Medicare, such an argument fails to account for Defendant's Pinkerton liability. Pinkerton v.United States, 328 U.S. 640 (1946). A defendant convicted of conspiracy is liable for the reasonably foreseeable acts of her co-conspirators committed in furtherance of a conspiracy. United States v. Ramos, 147 F.3d 281, 286 (3d Cir. 1998) (citing Pinkerton, 328 U.S. 640). The submission of fraudulent claims to Medicare certainly fits these criteria.

Finally, to the extent that McGill asks the Court to conduct a Rule 403 analysis at this juncture, such a request is premature. As explained above in connection with Defendant's motion to bar "inflammatory" language, the Court will conduct such an analysis upon Defendant's objection to the admission of certain evidence during the trial.

For these reasons, the Court will deny Defendant's motion in limine to bar introduction of peer comparison and estimate evidence.

### 6. Motion in Limine to Strike the Indictment asTime-Barred or in the Alternative to Amend the Indictment to Conform to the Statute of Limitations and Bar Evidence Outside the Statute of Limitations (ECF No. 367)

Defendant next moves to strike the indictment as time-barred or, in the alternative, to amend the indictment to conform to the statute of limitations and bar evidence outside the statute of limitations. ECF No. 367. In her motion, Defendant explains that the statute of limitations for both conspiracy to commit health care fraud under 18 U.S.C. § 1349 (Count One) and health care fraud under 18 U.S.C. § 1347 (Counts Two through Fourteen) is five years. Id. at 1. The Indictment, however, contains allegations dating back to 2003. Id. at 2. Because the Indictment against McGill was filed on March 21, 2012, Defendant claims that any evidence concerning acts committed prior to March 21, 2007, must be barred. Id. at 1.

Specifically, Defendant first argues that the conspiracy count (Count One) should be dismissed as time-barred. Defendant says that the Government contends that acts of concealment committed after the objectives of the conspiracy were accomplished delayed the running of the statute of limitations. Id. Defendant submits that the statute of limitations begins to run when the conspiracy's objectives are accomplished or the conspiracy is otherwise abandoned. Id. at 1-2. While the Indictment makes reference to obstruction by the co-defendants, no obstruction count was filed. Id. Defendant argues that all of the allegedly false claims that were the focus of the scheme were submitted to Medicare prior to February 23, 2007, thus the objective of the conspiracy was completed by that date. Id. Actions taken

thereafter were done to conceal the illegal activity and were not part of the conspiracy itself and thus do not delay the running of the limitations period. Id.

Defendant also argues that the vast majority of the substantive counts of health care fraud contain dates of service or billings prior to March 21, 2007. Id. at 3. Defendant argues that these counts must be stricken or amended to begin with activities occurring no earlier than March 21, 2007. Id.

The statute of limitations for all offenses alleged in the Indictment is five years. 18 U.S.C. § 3282 (five-year statute of limitations for all federal noncapital defenses). Because the Indictment was filed on March 21, 2012, any conduct occurring before March 21, 2007, would fall outside the statute of limitations. The instant Indictment, however, contains conduct prior to that date.

*12 The Court will first consider Defendant's claim that the conspiracy count of the Indictment is time-barred. The statute of limitations generally begins to run when a crime is complete. Toussie v. United States, 397 U.S. 112, 115 (1970). However, the statute of limitations for a continuing offense begins to run at the end of the last act that was part of the offense. United States v. Amirnazmi, 645 F.3d 564, 592 (3d Cir. 2011). The Third Circuit has held that conspiracy is a continuing offense. United States v. Jake, 281 F.3d 123, 129 n.6 (3d Cir. 2002). Accordingly, a jury can consider all of the defendant's actions in furtherance of a conspiracy so long as "the conspiracy, as contemplated in the agreement as finally formulated, was still in existence... [and] at least one overt act in furtherance of the conspiracy was performed" within the period of limitations. Grunewald v. United States, 353 U.S. 391, 397 (1957); see also Jake, 281 F.3d at 129 n.6. The scope of the conspiratorial agreement is therefore crucial in determining whether the statute of limitations has run, because the scope "determines both the duration of the conspiracy, and whether the act relied on as an overt act may properly be regarded as in furtherance of the conspiracy." Grunewald, 353 U.S. at 397.

Here, the Government must present evidence that an act in furtherance of the conspiracy occurred after March 21, 2007. Facts alleged under Counts 2 through 14 of the Indictment show that HCH both submitted claims to Medicare and provided services to patients as part of the fraud scheme as late as September 2008. Accordingly, overt acts in furtherance of the conspiracy were performed during the statutory period, and the conspiracy count is not barred by the statute of limitations. Further, the jury in this case can consider evidence of the defendant's actions in furtherance of the conspiracy that occurred prior to March 21, 2007, since conspiracy is a continuing offense. Grunewald, 353 U.S. at 397.

Next, the Court considers whether the substantive counts of health care fraud alleged in Counts 2 through 14 are time-barred. Although the Third Circuit has not addressed whether health care fraud under 18 U.S.C. § 1347 is a continuing offense, other courts of appeals and district courts within this Circuit have held that it is--a "conclusion [that] logically follows from § 1347's 'scheme' language." United States v. Salerno, No. 10-0301, 2011 WL 6141017, at *4 (M.D. Pa. Dec. 9, 2011) (citing United States v. Davis, 471 F.3d 783, 791 (7th Cir. 2006); United States v. Hickman, 331 F.3d 445, 447 n.8 (5th Cir. 2003)). Each of the health care fraud counts contains dates within the five-year statute of limitations period. Accordingly, the substantive counts are also timely.

Defendant claims that "the objective of the scheme was complete by February 23, 2007," when HCH was notified by a Medicare contractor that it was going to be audited. Notice of the audit, however, did not terminate the conspiracy. The Third Circuit has noted that "[a] conspiracy may have multiple objectives, and the conspiracy endures beyond the attainment of its principal goal if 'other subsidiary objectives' have yet to be achieved." United States v. Vasquez-Uribe, 429 F. App'x 131, 135 (3d Cir. 2011) (nonprecedential) (quoting United States v. Walker, 653 F.2d 1343, 1349-50 (9th Cir. 1981)). Relevant here, "where enrichment is an object of a conspiracy, the conspiracy continues until the conspirators receive the full economic benefits anticipated by their scheme." Id. (quoting United States v. McNair, 605 F.3d 1152, 1214 (11th Cir. 2010)). In this case, HCH continued to receive Medicare reimbursements for inappropriate patients through at least December 2008, even after notification of the audit. Accordingly, the conspiracy continued until at least December 2008.

Defendant claims that acts of concealment committed by the HCH defendants were not acts in furtherance of the conspiracy. In Grunewald, however, the Supreme Court drew a distinction between "acts of concealment done in furtherance of the main criminal objectives of the conspiracy, and acts of concealment done after these central objectives have been attained, for the purpose only of covering up after the crime." 353 U.S. at 405. Grunewald therefore

"directs [the court's] attention to the function served by the act of concealment in relation to the objectives of the conspiracy." United States v.Pecora, 798 F.2d 614, 630 (3d Cir. 1986). In analyzing an act of concealment, the court is to give the "in furtherance" requirement broad interpretation. Id. For instance, where "the concealment of the existence of the conspiracy served not only to cover up...past participation in criminal behavior, but to shield the ongoing conspiracy as well" such that "concealment enables the defendants to continue their illegal payoff scheme," those acts could be found in furtherance of the conspiracy. Id. In the instant case, acts of concealment charged in the Indictment occurred during the execution of the fraud scheme, not after the scheme was terminated.

 *13  For the reasons discussed above, the Court will deny Defendant's motion in limine to strike the indictment as time-barred or otherwise amend the indictment to conform to the statute of limitations.

## C. Remaining Motions

There remains several pending motions that the Court does not discuss in this memorandum, namely the Government's motion to admit tape recordings and transcripts, ECF No. 306, as amended, ECF No. 371; the Government's motion in limine for a determination that exhibits are business records under Federal Rule of Evidence 803(6) and that summaries of business records are admissible pursuant to Federal Rule of Evidence 1006, ECF No. 307; the Government's motion in limine to preclude assertion of a public authority defense or an entrapment by estoppel defense, ECF No. 381; Defendant's motion to compel discovery, ECF No. 369; and Defendant's motion to dismiss Counts 2-14 of the Indictment as violative of due process rights under the void for vagueness doctrine, or in the alternative a motion in limine to properly define the hospice regulation to the jury, ECF No. 380. The Court will consider these remaining motions at a hearing to be held at the conclusion of jury selection on January 7 or 8, 2016.

## IV. CONCLUSION

For the reasons discussed above, the Court's disposition of the pending motions and limine and other pretrial motions is as follows:

1. The Government's motion to permit the jury to use a redacted indictment during deliberations, ECF No. 251, will be taken under advisement until the conclusion of the case;

2. Defendant's motion in limine to hold a hearing to determine admissibility of alleged co-conspirators' statements and establish the order of proof to prove a conspiracy, ECF No. 356, is denied;

3. Defendant's motion in limine to bar inflammatory language, ECF No. 357, is denied as premature;

4. Defendant's motion in limine for disclosure of forged or altered documents and a bill of particulars, ECF No. 358, is denied;

5. Defendant's motion in limine to specifically disclose Brady or Giglio material, ECF No. 359, is denied;

6. Defendant's motion to exclude peer comparison data and estimate evidence, ECF No. 361, is denied; and

7. Defendant's motion in limine to strike the indictment as time-barred or in the alternative to amend the indictment to conform to the statute of limitations and bar evidence outside the statute of limitations is denied, ECF No. 367.

The Court will consider the remaining motions at a hearing to be held at the conclusion of jury selection on January 7 or 8, 2016.
An appropriate order follows.

**All Citations**

Slip Copy, 2016 WL 48214