# GIBSON DUNN

Gibson, Dunn & Crutcher LLP

200 Park Avenue
New York, NY 10166-0193
Tel 212.351.4000
www.gibsondunn.com

Randy M. Mastro
Direct: +1 212.351.3825
Fax: +1 212.351.5219
RMastro@gibsondunn.com

April 12, 2016

VIA CM/ECF

The Honorable Susan D. Wigenton
United States District Judge
District of New Jersey
M.L. King Jr. Federal Building & Courthouse
50 Walnut Street
Newark, New Jersey 07102

Re:     **United States v. Baroni, et al., 15 Cr. 193 (SDW)**

Dear Judge Wigenton:

We respectfully write as counsel to the Office of the Governor of New Jersey ("OGNJ") to request a brief two-week extension to respond to Defendants' Rule 17(c) subpoena. This modest extension is necessary to allow OGNJ to secure entry of a protective order covering documents produced by a non-party such as OGNJ; to produce documents responsive to Defendants' subpoena; and to otherwise move the Court for appropriate relief from Defendants' overbroad and unauthorized requests seeking irrelevant and privileged materials. The requested extension will not prejudice the parties in this action, as they will have more than four months to assess the materials produced and prepare their cases in advance of the trial now scheduled for September 12, 2016—more than four times the amount of time they would have had under the schedule in effect at the time Defendants issued the subpoena. Both Defendants consent to the requested two-week extension; the Government, not a party to Defendants' subpoena, has not consented.

## I.     Background

In January 2014, the Government directed grand jury subpoenas to OGNJ covering an array of topics, including but not limited to the lane realignment on the George Washington Bridge ("lane realignment") and allegations by Hoboken Mayor Dawn Zimmer regarding Superstorm Sandy aid allocation. In 2014 and continuing into 2015, OGNJ produced more than 250,000 pages of responsive documents to the Government.

In November 2015, Defendants filed separate discovery motions seeking, *inter alia*, authorization to direct a Rule 17(c) subpoena to OGNJ "*to obtain the same documents from the Office of the Governor of New Jersey that the government received*." Doc 43 at 55 (emphasis added). Indeed, during a February 5, 2016 hearing, Defendant Kelly's counsel reiterated his desire for a "Rule 17(c) subpoena that would allow us *to essentially serve the*

**GIBSON DUNN**

The Honorable Susan D. Wigenton
April 12, 2016
Page 2

*same subpoena the Government served* on Gibson Dunn to put us in a position to challenge and have standing to challenge [OGNJ's deliberative process] privilege assertions." Transcript of Hearing on February 5, 2016 ("Tr.") at 13:11-18 (emphasis added). In light of those explicit representations by defense counsel targeting the scope of the subpoena, the Court concluded that it was "appropriate to pursue" the Rule 17(c) subpoena, but did not specify a return date. Tr. at 23:18-20.

On March 10, more than a month after this Court granted Defendants permission to direct Rule 17(c) subpoenas to OGNJ, Defendant Baroni served on OGNJ a subpoena *duces tecum*. On March 16, Defendant Kelly served a copy of an identical subpoena. Both subpoenas specified a return date of April 14—approximately one month before trial was scheduled, at that time, to begin.[1] Contrary to Defendants' explicit representations to the Court regarding the scope and purpose animating their request, the subpoena served by the Defendants includes numerous additional demands far exceeding the scope of the Government's grand jury subpoenas. Among those additional demands—demands which were made without regard for relevancy and that plainly exceed the scope of the Government's grand jury subpoenas—are demands for: (1) "all" documents reviewed by Gibson, Dunn & Crutcher LLP ("GDC") in preparation of its report following its investigation on behalf of OGNJ, (2) the physical items corresponding to "all" devices and "all forensic analyses" conducted upon or related to all of the devices identified in the report prepared by GDC, (3) materials post-dating the report prepared by GDC, up to and including the present date, and (4) "all" documents related to Defendant Kelly and William Stepien. <u>To be clear, the Government did not seek or receive from OGNJ anything resembling the volume of documents sought by Defendants here</u>.

The requested extension is necessary for OGNJ to negotiate with the parties and move this Court for entry of a protective order that would apply to OGNJ's production of documents. The operative Protective Order in this case (Doc. 22) applies only to documents produced by the Government. Because OGNJ expects its production to include documents falling within the protected categories of the operative Protective Order, we circulated to Defendants and the Government on April 8 a proposed protective order that would apply to documents produced by OGNJ. At the same time, we also requested a four-week extension of time to respond to Defendants' subpoena in order to allow sufficient time for the new protective order to be approved and entered by this Court and for OGNJ to respond to Defendants' subpoena. The Government declined to agree to a four-week extension, raising a concern that such an extension might delay the trial date now scheduled for September 12,

---

[1] Because both subpoenas are substantively identical, for the purposes of this letter, OGNJ will be referring to them collectively in the singular.

**GIBSON DUNN**

The Honorable Susan D. Wigenton
April 12, 2016
Page 3


2016.  The Government further declined to agree to a shorter two-week extension.  However, Defendants—the parties issuing the subpoena—consented to OGNJ's request for two additional weeks to respond to and move on Defendants' subpoena.

II.   **A Modest Two-Week Extension Is Reasonable and Necessary to Allow OGNJ to Respond to Defendants' Subpoena.**

Good cause exists to grant an extension of time for OGNJ to negotiate with Defendants and the Government as to the terms of a new protective order and to respond to Defendants' subpoena.

*First*, because the existing Protective Order applies only to "the use of discovery materials produced by the Government," Doc. 22 at 1, negotiation and entry of a new protective order governing OGNJ's production is necessary.  Among other categories of documents, the Protective Order restricts public access to documents that do not "relate[] to the allegations contained in the Indictment."  Doc. 22 at 1.  This Court has already determined that the Government's production—which apparently includes documents produced to the Government by OGNJ—contains documents that do not "relate[] to the allegations contained in the Indictment," and OGNJ has a continuing interest in preserving the confidentiality of many of the documents under applicable law.  Because OGNJ expects that it will address certain demands in Defendants' subpoena by producing documents that should continue to be preserved as confidential, a new protective order covering documents to be produced by OGNJ is necessary.[2]

*Second*, OGNJ needs additional time to prepare its response to the numerous demands in the Defendants' subpoena.  Defendants have submitted to this Court various arguments concerning OGNJ's invocation of privilege as to certain categories of documents not relevant to the allegations in the Indictment.  OGNJ needs a brief period of additional time to respond to those arguments.  Moreover, contrary to defense counsel's representation to the Court, Defendants' subpoena does not simply mirror the grand jury subpoenas issued

---

[2] Last week, we circulated to the parties a proposed protective order—which was modeled off of the Protective Order entered in this matter—and the parties have had preliminary discussions regarding our proposal.  We expect to reach an agreement on a consented-to protective order for the Court's consideration in advance of the requested April 28 production deadline.  Should the need arise, however, we will expeditiously bring any issues regarding the proposed protective order to the Court's attention so that we may be able to produce responsive documents by the requested new deadline, or as soon as a new protective order is entered.

**GIBSON DUNN**

The Honorable Susan D. Wigenton
April 12, 2016
Page 4

by the Government; accordingly, OGNJ expects to also move the Court for appropriate relief.

   Neither Defendants nor the Government will be prejudiced by the requested extension of time. Defendants directed the subpoena to OGNJ on March 10, more than one month after this Court's order of February 5 granting leave for them to direct a subpoena to OGNJ—demonstrating no particular urgency in their demands. Nor is there any continuing rationale for the April 14 date Defendants selected when they directed the subpoena to OGNJ. That deadline presupposed that trial would begin on May 16, 2016. Doc. 67. In other words, Defendants previously anticipated only needing about one month (between the return date specified in the subpoena to OGNJ (April 14) and the beginning of trial (May 16)) to assess any production by OGNJ and prepare for trial. But of course, there is a new operative trial date: this Court recently granted the parties almost four additional months to prepare for trial, by rescheduling trial for September 12. Doc. 94. Accordingly, the modest two-week extension OGNJ now seeks will not prejudice the parties' preparation of their case, as they will still have more than four months to assess any production by OGNJ—*more than four times* the duration of time Defendants expected to have at the time the subpoena was issued.

          \*   \*   \*

   This Court should grant OGNJ's request for extension of time to respond to Defendants' subpoena *duces tecum* pursuant to Fed. R. Crim. P. 17(c), adjourning the return date to April 28, 2016.[3]

   Thank you for your consideration.

Respectfully,


/s/  Randy M. Mastro
Randy M. Mastro

cc: All counsel (*via ECF*)

---

[3]  In seeking to enlarge the time for responding to Defendants' subpoena, OGNJ does not waive any privilege or immunity against compliance with the subpoena.