## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

UNITED STATES OF AMERICA

v.

Crim. No. 15-193 (SDW)

WILLIAM BARONI, et. al,

Defendants.

### DECLARATION OF ALEXANDER H. SOUTHWELL
### IN SUPPORT OF MOTION OF
### NONPARTY OFFICE OF THE GOVERNOR OF NEW JERSEY
### TO QUASH IN PART DEFENDANTS' SUBPOENA *DUCES TECUM*

Alexander H. Southwell, pursuant to 28 U.S.C. § 1746, hereby declares:

1.       I am a partner at Gibson, Dunn & Crutcher LLP, counsel for nonparty Office of the Governor of New Jersey (the "OGNJ") in this matter, in which I appear *pro hac vice*.  I make this declaration in support of the OGNJ's Motion to Quash in Part Defendants' *Subpoena Duces Tecum*.  Prior to joining GDC, I served as an Assistant United States Attorney in the United States Attorney's Office for the Southern District of New York.  I received a Bachelor of Arts degree from Princeton University in 1993, and a Juris Doctor from New York University in 1997.  I am also an Adjunct Professor of Law at Fordham University School of Law.

### OGNJ's Production Of Documents Complying With The Grand Jury Subpoenas

2.       Beginning in January 2014, the Government, acting through the U.S. Attorney's Office, directed grand jury subpoenas to the OGNJ and related New Jersey Executive Branch components for various topics under investigation (the "Grand Jury Subpoenas").  The Grand Jury Subpoenas contained broad document requests addressing the September 2013 George Washington Bridge lane realignment near Fort Lee, New Jersey; the allegations of Dawn

Zimmer, the Mayor of Hoboken, concerning Superstorm Sandy aid allocation; and OGNJ's interactions with Steven Fulop, the Mayor of Jersey City.  OGNJ asked GDC to assist with searching for, collecting, reviewing, and producing to the Government all documents responsive to the requests in the Grand Jury Subpoenas, as part of OGNJ's cooperation with the Government's investigation.  A true and correct copy of the subpoena received from the U.S. Attorney's Office related to, or seeking documents regarding, the Fort Lee access lanes is attached hereto as Exhibit **A**.

3.      In order to respond to the broad requests in the Grand Jury Subpoenas, I worked with a team to search for and collect hard copy and electronic documents and records (commonly referred to as Electronically Stored Information or "ESI") within OGNJ's custody, including personal texts and emails of the Governor, the Lieutenant Governor, and their senior staffers. Electronic records searches based solely on the broad requests in the Grand Jury Subpoenas, without consultation with the Government, would have returned a massive volume of ESI, the vast majority of which would have been meaningless to the investigation but would have been extremely burdensome to gather and review.  OGNJ and the Government therefore engaged in conversations customary to responding to subpoenas, which assisted in prioritizing and tailoring the requests and search procedures so that OGNJ would produce documents of actual use to the Government's investigation, not simply all ESI theoretically responsive to the Grand Jury Subpoenas.

4.      Those conversations culminated in establishment of an extensive set of keyword search terms that were used to identify potentially responsive documents and identification of a comprehensive list of custodians whose ESI was collected and searched.  Indeed, where the Government requested that we employ specific search terms, OGNJ included those terms in its

searches, and produced documents identified through those terms. To be clear, OGNJ's comprehensive set of custodians and extensive search terms were created to ensure *all* relevant ESI was collected. The custodians included every conceivable employee of OGNJ who might possess relevant documents, and the search terms included every likely term which might identify relevant documents. These search terms and custodians, formulated based on OGNJ's consultations with the Government, were intended to identify any potentially responsive material for further review. We also worked to tailor our production to the Government pursuant to the Grand Jury Subpoenas in other ways. For example, OGNJ searched and produced documents covering the time period beginning on January 1, 2013, rather than on January 1, 2010 as the Grand Jury Subpoenas initially requested, because from our consultations with the Government we understood that the investigation did not substantially concern events prior to 2013. As another example, OGNJ did not produce each and every document containing the term "Fort Lee," as the Grand Jury Subpoenas initially requested, but instead produced the subset of those documents that also contained information related to the George Washington Bridge lane realignment, again with full explanation to, and in consultation with, the Government.

5.     The Government repeatedly stressed that it was important for OGNJ to produce documents as swiftly as possible, in order to accommodate the needs of the Government's investigation. To address this need, on OGNJ's behalf, we produced to the Government documents on a rolling basis, as soon as documents were able to be reviewed and produced, and in batches of materials kept in the ordinary course of OGNJ business. Indeed, in the seven weeks between February 6 and March 28, 2014, OGNJ made 22 separate document productions to the Government. Each production was made in a computer-readable format, in accordance with instructions and consultations with the Government.

**OGNJ's Privilege Review Concerning The Grand Jury Subpoenas**

6.    The primary function of OGNJ is to analyze, review, deliberate, and recommend courses of action requiring the Governor's ultimate decision-making as he carries out his constitutional, statutory, and policymaking responsibilities under the laws of the State of New Jersey.  Accordingly, documents created by and communications among employees of OGNJ typically include such deliberations.  As a result, OGNJ determined that complying with the Grand Jury Subpoenas would necessarily require reviewing its documents to determine whether they fell within the deliberative process privilege.

7.    GDC attorneys on behalf of OGNJ, along with OGNJ counsel, therefore undertook an extensive review of OGNJ's documents for privilege, conducting a methodical, document-by-document analysis to determine whether each document was related to or contemporaneous with the lane realignment as described in the Indictment or related to Mayor Zimmer's allegations concerning Superstorm Sandy aid.  If the document fell within that category, the document was produced to the Government—*regardless of whether the document would otherwise have been privileged*.  In other words, OGNJ did not claim a privilege, even if otherwise available, over material related to or contemporaneous with the lane realignment as described in the Indictment or related to Mayor Zimmer's allegations concerning Superstorm Sandy aid.  *Only* if the material in the document did not fall within that category (because it contained a keyword search term, but was otherwise substantively irrelevant to the requests in the Grand Jury Subpoenas) did counsel review the document to assess privilege, including deliberative process privilege.

8.    If counsel determined that one of those substantively irrelevant documents was privileged, counsel then determined whether the document could be produced in redacted form

or whether it had to be withheld in its entirety.  Where privileged information could be appropriately redacted from a document, OGNJ produced the document after redacting the privileged information.  Only where the privileged information could not be appropriately redacted from the document did OGNJ withhold the document in its entirety.

9.      OGNJ also produced several logs to the Government, which fully captured all redacted and withheld documents.  One log specified the details of the documents produced in redacted form; another log specified the details of the documents withheld in their entirety; and a third log addressed documents containing excision of information on personal privacy protection grounds (such as individual, personal contact information).  OGNJ also undertook special effort to ensure that the logs produced contained individual entries for each document, detailing, to the extent practicable depending on the log, any applicable Bates range, date of the document, type of document, authors, recipients, the category of privilege being invoked (*e.g.*, deliberative process privilege), and a brief description of the grounds for the claimed privilege (without disclosing the document's contents).  In total, out of the approximately 25,000 documents OGNJ identified as responsive to the Grand Jury Subpoenas because they returned as search results for search terms, OGNJ claimed deliberative process privilege over 5,415 documents—withholding 2,366 documents in their entirety, and producing 3,049 documents with redactions.

10.     OGNJ's purpose in withholding documents under the deliberative process privilege was to ensure that OGNJ was able to continue to have open and frank discussions on matters of policy between subordinates and superiors, at both the intra-agency and inter-agency levels.  Therefore, OGNJ withheld only those documents that were *not* related to or contemporaneous with the lane realignment as described in the Indictment or Mayor Zimmer's allegations concerning Superstorm Sandy aid, and contained pre-decisional deliberations,

preliminary evaluations, opinions, or recommendations at both the intra-agency and inter-agency levels. The inter-agency deliberations at issue included discussions between OGNJ and the Port Authority of New York and New Jersey, given that the Governor of New Jersey retains veto rights over the actions of the Port Authority Commissioners from his state, and thus ultimately supervises and oversees the Port Authority jointly with the Governor of New York. *See, e.g.*, N.J. Stat. Ann. § 32:1-17. The irrelevant policy discussions in the documents OGNJ withheld based on privilege concerned such matters as, for example, proposed distributions of a foundation's donation of books; pending applications to open certain charter schools; proposals to develop Super Bowl events for New Jersey residents; the World Trade Center Memorial; port productivity and congestion; airport parking; and municipal solid waste.

### Defendants' Rule 17(c) Subpoena to OGNJ

11.     On February 5, 2016, in response to Defendants' discovery motions, this Court by oral order ("Order") granted Defendants leave to direct a Rule 17(c) subpoena *duces tecum* to OGNJ. Defendant Baroni served a subpoena on March 10, 2016. A true and correct copy of this subpoena is attached hereto as Exhibit **B**. On March 16, 2016, Defendant Kelly served a substantively identical copy of the subpoena Defendant Baroni had served. A true and correct copy of this subpoena is attached hereto as Exhibit **C**.

12.     A comparison between the Grand Jury Subpoenas and the subpoena directed by Defendants to OGNJ demonstrates that the Defendants' subpoena to OGNJ seeks many documents and items never sought in the Grand Jury Subpoenas.

13.     On two occasions in March 2016, I spoke by telephone with Assistant United States Attorney Lee M. Cortes, Jr., about the interactions after the Order between the Government and counsel for Defendants as to the subpoena Defendants directed to OGNJ. AUSA Cortes informed me that after the Order he had conversations with counsel for Defendant

Baroni, Michael Baldassare—but not counsel for Defendant Kelly—concerning the subpoena before Defendant Baroni served the subpoena on OGNJ on March 10, 2016.

14.     Specifically, AUSA Cortes informed me that Mr. Baldassare asked the Government about the scope of the Grand Jury Subpoenas, and that while the Government did not provide copies of the Grand Jury Subpoenas to Mr. Baldassare, AUSA Cortes offered to describe to Mr. Baldassare the requests contained in the Grand Jury Subpoenas. AUSA Cortes also said that Mr. Baldassare subsequently transmitted to the Government a proposed subpoena directed to OGNJ. AUSA Cortes confirmed that the proposed subpoena sent by Mr. Baldassare to the Government appeared to be the same as the subpoena Defendant Baroni directed to OGNJ on March 10, 2016. AUSA Cortes told Mr. Baldassare his proposed subpoena contained particular items, among others, that went beyond the Grand Jury Subpoenas, and that the Court's Order had not authorized a subpoena compelling pretrial production of those materials. AUSA Cortes said that Mr. Baldassare indicated that he intended to serve that proposed subpoena on OGNJ anyway.

15.     Because the Government had not provided copies of the Grand Jury Subpoenas to Defendants, I sought confirmation from AUSA Cortes about whether the Government would have any concerns about OGNJ's production of any Grand Jury Subpoenas called for by Defendants' subpoena. AUSA Cortes told me that the Government did not take a position on that issue.

I declare under penalty of perjury that the foregoing is true and correct. Executed on this 28th day of April, 2016 at New York, New York.

Alexander H. Southwell

# Exhibit A

# United States District Court

FL04       DISTRICT OF       **NEW JERSEY**

TO:

**Custodian of Records**
**Office of the Governor**
**State of New Jersey**
**State House**
**125 State Street**

## SUBPOENA TO TESTIFY
## BEFORE GRAND JURY

SUBPOENA FOR:
☐ PERSON       ☒ DOCUMENT(S) OR OBJECT(S)

YOU ARE HEREBY COMMANDED to appear and testify before the Grand Jury of the United States District Court at the place, date, and time specified below.

| PLACE | ROOM |
|---|---|
| Martin Luther King Jr. Federal Bldg. & Courthouse<br>50 Walnut Street<br>Newark, New Jersey 07102 | Grand Jury Room 1040 |
| | DATE AND TIME |
| | **Feb. 5, 2014** |

YOU ARE ALSO COMMANDED to bring with you the following document(s) or object(s):*

### SEE ATTACHMENT A

**Please contact Supervisory Criminal Investigator Thomas J. Mahoney, at (973) 645-2763, thomas.mahoney@usdoj.gov to confirm details of compliance with this subpoena.**

☐ *Please see additional information on reverse.*

This subpoena shall remain in effect until you are granted leave to depart by the court or by an officer acting on behalf of the court.

| CLERK | DATE |
|---|---|
| **WILLIAM T. WALSH** | January 17, 2014 |
| (By) Deputy Clerk | |

| | NAME, ADDRESS AND PHONE NUMBER OF ASSISTANT U.S. ATTORNEY |
|---|---|
| This subpoena is issued on application<br>of the United States of America<br><br>PAUL J. FISHMAN<br>UNITED STATES ATTORNEY | LEE M. CORTES<br>U.S. Attorney's Office    2014R00025<br>970 Broad Street |

* If not applicable, enter "none".

FORM OBD-227
Revised April 2000

| RETURN OF SERVICE   (1) | | |
|---|---|---|
| **RECEIVED BY SERVER** | DATE | PLACE |
| **SERVED** | DATE | PLACE |

SERVED ON (NAME)

| SERVED BY | TITLE |
|---|---|

## STATEMENT OF SERVICE FEES

| TRAVEL | SERVICES | TOTAL |
|---|---|---|

## DECLARATION OF SERVER   (2)

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on _____        _____
                            *Date*                                      *Signature of Server*


_____
*Address of Server*

ADDITIONAL INFORMATION

(1) As to who may serve a subpoena and the manner of its service see rule 17(d), Federal Rules of Criminal Procedure, or Rule 45(c), Federal Rules of Civil Procedure.

(2)"Fees and mileage need not be tendered to the witness upon service of a subpoena issued on behalf of the United States or an officer or agency thereof (Rule 45(c), Federal Rules of Civil Procedure; Rule 17(d), Federal Rules of Criminal Procedure) or on behalf of certain indigent parties and criminal defendants who are unable to pay such costs (28 USC 1825, Rule 17(b) Federal Rules of Criminal Procedure)".

## ATTACHMENT A

Custodian of Records
Office of the Governor
State of New Jersey
State House
125 State Street
Trenton, New Jersey 08625

c/o   Randy M. Mastro, Esq.
Gibson, Dunn & Crutcher
200 Park Avenue
New York, NY 10166-0193

1.     For the following records (in any form) for the time period from January 1, 2010 to the present:

      a.   Any and all records relating to access lanes for the Borough of Fort Lee onto the George Washington Bridge (the "Fort Lee access lanes") including, but not limited to:

            i.   any and all records relating to any alteration of the Fort Lee access lanes;

           ii.   any and all records relating to any consideration of altering the Fort Lee access lanes;

         iii.   any and all records relating to any impact or potential impact on traffic flow through the Borough of Fort Lee resulting from any alteration of the Fort Lee access lanes; and

         iv.   any and all records relating to any traffic study of or test pertaining to the Fort Lee access lanes;

      b.   Any and all records relating to any traffic study of or test pertaining to the George Washington Bridge, its access lanes, and approaches;

      c.   Any and all records relating to the Borough of Fort Lee or its Mayor; and

      d.   Any and all records relating to the following individuals:

            i.   William E. ("Bill") Baroni, Jr.; and

       ii.  David Wildstein.

2. A list of all personnel within the Office of the Governor from January 1, 2013 to the present, and any mobile telephone numbers and email addresses issued to, assigned to, used by, or subscribed to by those personnel.

The production of the above-referenced records should specifically include all records of communications (in whatever form, including e-mails, text messages, voicemails, instant communications), correspondence, notes, memoranda, agendas, word processing documents, spreadsheets, databases, telephone messages and logs, diaries, calendars, and calendar entries. In addition, the above-referenced records should include all such records maintained on all computers, hard drives, data storage devices, mobile phones, and tablet computers under the care, custody or control of the Office of the Governor.

All records should be provided in a computer readable file format. Any documents withheld from production on the basis of any claimed privilege or protection must be preserved and a privilege log must be produced identifying each record and the basis of any claimed privilege or protection for that record.

Exhibit B



**BALDASSARE
& MARA, LLC**
Attorneys at Law

**VIA HAND DELIVERY**

March 10, 2016

Alexander H. Southwell, Esq.
Gibson, Dunn & Crutcher LLP
200 Park Avenue
New York, NY 10166-0193

        Re:    *United States v. William E. Baroni, et al.,*
                Criminal No.: :15-cr-00193-SDW

Dear Mr. Southwell:

    Enclosed is a subpoena to the Office of the Governor of New Jersey.  If you have any questions, please call me.

                           Sincerely,

                           Michael Baldassare

Enc.

AO 89  (Rev. 08/09) Subpoena to Testify at a Hearing or Trial in a Criminal Case

# UNITED STATES DISTRICT COURT
## for the

| | |
|---|---|
| United States of America | ) |
| v. | ) |
| William E. Baroni, Jr. and | )    Case No. 2:15-cr-00193-SDW |
| Bridget Anne Kelly | ) |
| *Defendant* | ) |

## SUBPOENA TO TESTIFY AT A HEARING OR TRIAL IN A CRIMINAL CASE

To: Office of the Governor of New Jersey
New Jersey State House
125 West State Street
Trenton, New Jersey 08608

**YOU ARE COMMANDED** to appear in the United States district court at the time, date, and place shown below to testify in this criminal case. When you arrive, you must remain at the court until the judge or a court officer allows you to leave.

| Place of Appearance: Susan D. Wigenton, USDJ MLK Building, 50 Walnut Street Newark, New Jersey 07102 | Courtroom No.: 5060 |
|---|---|
| | Date and Time: 4/14/2016 at 9:00 AM |

You must also bring with you the following documents, electronically stored information, or objects *(blank if not applicable)*:

See Attached.

*(SEAL)*

Date: 3/9/16

CLERK OF COURT

*Signature of Clerk or Deputy Clerk*

The name, address, e-mail, and telephone number of the attorney representing *(name of party)* William E. Baroni, Jr. _____ , who requests this subpoena, are:

Michael Baldassare, Esq., and Jennifer Mara, Esq.
Baldassare & Mara, LLC
570 Broad Street, Suite 900
Newark, New Jersey 07102
mbaldassare@mabalaw.com
973-200-4066

AO 89  (Rev. 08/09) Subpoena to Testify at a Hearing or Trial in a Criminal Case (Page 2)

Case No.

## PROOF OF SERVICE

This subpoena for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

□  I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

□  I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ ____0.00____ .


I declare under penalty of perjury that this information is true.


Date: _____                   _____
                                                    *Server's signature*


                                         _____
                                                  *Printed name and title*



                                         _____
                                                    *Server's address*

Additional information regarding attempted service, etc:

## I.   DEFINITIONS AND INSTRUCTIONS

The following Definitions and Instructions apply to all documents and physical items subject to this Subpoena.

1.      "Records" and "Documents" include, but are not limited to, communications in whatever form, including emails, texts, voicemails, texts of voicemails, iMessages, instant messages, correspondence, notes, memoranda, agendas, word processing documents, spreadsheets, databases, telephone messages and logs, diaries, calendars and calendar entries.

2.      The terms "any," "all," "each," and "every" should be understood in either their most or least inclusive sense as necessary to bring within the scope of the Requests all Documents or Devices that might otherwise be construed outside of their scope.

3.      The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the Requests all Documents or Devices that might otherwise be construed outside of their scope.

4.      The use of the singular form of any word shall be taken to mean the plural as well as the singular, and the use of the plural form of any word shall be taken to mean the singular as well as the plural.

5.      The use of a verb in any tense, mood, or voice shall be construed as the use of the verb in all tenses, moods, or voices, as necessary to bring within the scope of the Requests all Documents or Devices that might otherwise be construed outside of their scope.

6.      Defined terms may be capitalized for convenience; the Definitions herein apply whether or not the term is capitalized.

7.      "OGNJ" means the Office of the Governor of New Jersey.

8.      For purposes of the production of "Devices," the term includes but is not limited to cellphones, iPads, tablets, laptops, and desktop computers.

## II.   DOCUMENTS AND PHYSICAL ITEMS TO BE PRODUCED

In response to these Requests, the OGNJ is required to produce all Documents and physical items in its possession, custody, or control, including Documents and Devices in the possession of, or available or accessible to, the OGNJ or any of its agents, *e.g.*, Stroz Friedberg, attorneys or representatives.

The timeframe of the Requests in this Subpoena is January 1, 2010 to present.

### A.   Documents Subject to this Subpoena

1.   All records relating to the closure of the access lanes for the Borough of Fort Lee onto the GWB ("Fort Lee access lanes") at any time including, but not limited to, September 9-13, 2013.

2.   All records relating to the Fort Lee access lanes regarding:

- alteration of the Fort Lee access lanes;
- consideration of altering Fort Lee access lanes;
- impact or potential impact on traffic flow through the Borough of Fort Lee resulting from any alteration of the Fort Lee access lanes; and
- all traffic studies or tests pertaining to Fort Lee access lanes.

3.   All records related to all traffic studies or tests pertaining to the GWB, its access lanes and approaches.

4.   All records relating to the Borough of Fort Lee or Mayor Mark Sokolich.

5.   All records relating to the following:

- William E. Baroni;
- David Wildstein;
- Bridget Anne Kelly; and
- William Stepien.

6.    A list of all personnel within the OGNJ from January 1, 2013 to present, and all mobile numbers and email addresses issued to, assigned to, used by or subscribed to by those personnel.

7.    All subpoenas received from the U.S. Attorney's Office for the District of New Jersey related to, or seeking documents regarding, the Fort Lee access lanes.

8.    All Documents and information referred to in the first full paragraph on Page 39 of the March 26, 2014 Gibson Dunn & Crutcher LLP Report.

**B.    <u>Physical Items</u>**

1.    Produce for inspection all phones and other Devices (collectively "Devices"), *e.g.*, iPads, computers, tablets, etc., including but not limited to those identified in the first full paragraph on Page 39 of the March 26, 2014 Report of Gibson Dunn & Crutcher LLP.

2.    Produce all forensic analyses conducted upon or related to all such Devices.

3.    All Documents demonstrating a chain of custody for each Device.

**III.     DOCUMENTS WITHHELD, REDACTED OR OTHERWISE NOT PRODUCED**

1.      If any document, or portion thereof, is withheld because the OGNJ claims that it is protected under the attorney-client privilege, work product doctrine, or other legally recognized privilege or doctrine, the OGNJ must provide a log that conforms with the sample attached as Exhibit A.  Thus, for each document withheld or redacted, the log must contain the information in the order set forth in the sample log provided as Exhibit A.  All Documents withheld or redacted shall appear grouped by each custodian, *e.g.*, the Documents withheld or redacted for a custodian shall not be interspersed with Documents withheld or redacted for other custodians.  The logs shall be provided in Excel format so that they can be searched or sorted by column.  If a field is empty, *e.g.*, "subject" or "cc," the log shall so indicate with the word "NONE," in all capital letters.

2.      If a document is withheld based upon the Deliberative Process Privilege, or any similar privilege, provide the requisite affidavit signed by a person of appropriate authority stating or setting forth:

- that he/she personally reviewed each document claimed privileged;
- the specific designation and description of each Document claimed privileged;
- the precise and certain reasons for preserving the confidentiality of each Document; and
- the specific reasons why each document is pre-decisional and deliberative.

3.      If the OGNJ claims that a portion of a document is protected from disclosure for any other legally recognized reason, the document must be produced with redaction of only the portion claimed to be protected.  Every document produced in redacted form should clearly indicate on its face that it has been redacted.  The OGNJ must produce a redaction log under the same format as required by the privilege log.  The redaction log shall be a separate document from the privilege log.

4.      If any Document or Device called for by these Requests has been destroyed, discarded, otherwise disposed of, no longer exists, or is unavailable that Document or Device is to be identified in a log setting forth the following information:

- author(s), addressee(s), copy or blind copy recipient(s), date, subject matter, date of disposal;

- reason for disposal, the person authorizing the disposal, and the person disposing of the Document or Device; and

- the Document's or Device's last known location.

5.      If the OGNJ objects to a portion or an aspect of a Request, the OGNJ is required to state the basis for the objection with specificity within 14 days of the date on the Subpoena and to respond to any portions of the Request concerning which the OGNJ has not propounded an objection.

IV.   **FORMAT OF THE DOCUMENT PRODUCTION**

    1.    The documents shall be produced in the same order as maintained in the ordinary course of business and in accordance with Rule 45 of the Federal Rules of Civil Procedure.

    2.    Each custodian's records shall be produced in electronic form in a folder bearing the custodian's name.   Within that folder will be subfolders that segregate the documents produced by type, *e.g.*, emails, documents, etc.

    3.    Documents shall be produced as searchable PDFs, subject to the following:

- responsive documents that cannot be produced in PDF format due to technical reasons shall be produced in a computer-readable and text searchable format to be mutually determined by the parties; and

- Microsoft Excel files, Microsoft PowerPoint files, database files, HTML files and other responsive documents that are most conveniently viewed in their native electronic format shall be produced in their native electronic format.

    4.    The OGNJ shall produce all drafts and copies of every document responsive to this Subpoena, and all copies of such documents that are not identical, including but not limited to copies containing handwritten notes, markings, stamps, or interlineations.

    5.    Documents shall be produced in their entirety and as they are kept in the ordinary course of business.   Thus, discrete Documents shall not be combined into one file, meaning that a 10-page memorandum and a 15-page letter shall be produced as two files, not as one 25-page PDF.  Documents shall be produced with all enclosures and attachments. Documents attached to each other, including but not limited to by staple, clip, tape, e-mail attachment, or "Post-It" note, should not be separated.  If a Document is covered in any way by, for example, a "Post-It" note, it must be produced with and without the obstruction, in consecutively Bates numbered pages, with the first document being the one in which it was kept in the ordinary course of business. The production must also include, where applicable, all index tabs, file dividers, designations,

binder spine labels, or other similar information as to the source and/or location of the Documents.

*       *       *       *

If the OGNJ has questions about this or any other requirement, please contact the firm that issued this Subpoena.

# Exhibit C

CRITCHLEY, KINUM & DeNoia, LLC
ATTORNEYS AT LAW
75 LIVINGSTON AVENUE · SUITE 303
ROSELAND, NEW JERSEY 07068

MICHAEL CRITCHLEY
MICHAEL CRITCHLEY, JR.
CHRISTOPHER W. KINUM
EDMUND DeNOIA
AMY LURIA

CHRISTOPHER L. FOX

(973) 422-9200

Fax: (973) 422-9700
web site: www.critchleylaw.com

March 16, 2016

*Via e-mail & First Class Mail*

Alexander H. Southwell, Esq.
Gibson, Dunn & Crutcher LLP
200 Park Avenue
New York, New York 10166-0193

Re:   *United States v. William E. Baroni, et al.*
       *Criminal No.: 15-193 (SDW)*

Dear Mr. Southwell:

Enclosed is a subpoena to the Office of the Governor of New Jersey. If you have any questions, please call me.

Very truly yours,

MICHAEL CRITCHLEY

MC:mc
Enc.

AO 89  (Rev. 08/09) Subpoena to Testify at a Hearing or Trial in a Criminal Case

# UNITED STATES DISTRICT COURT
## for the
District of New Jersey

| | | |
|---|---|---|
| United States of America | ) | |
| William E. Baroni, Jr. and Bridget Anne Kelly | ) ) ) | Case No.   2:15-00193-SDW |
| _Defendant_ | ) ) | |

### SUBPOENA TO TESTIFY AT A HEARING OR TRIAL IN A CRIMINAL CASE

To: Office of the Governor of New Jersey
   New Jersey State House
   125 West State Street
   Trenton, New Jersey 08608

   **YOU ARE COMMANDED** to appear in the United States district court at the time, date, and place shown below to testify in this criminal case.  When you arrive, you must remain at the court until the judge or a court officer allows you to leave.

| Place of Appearance: Susan D. Wigenton, USDJ MLK Building, 50 Walnut Street Newark, New Jersey 07102 | Courtroom No.: 5060 |
|---|---|
| | Date and Time: 4/14/2016 at 9:00 AM |

   You must also bring with you the following documents, electronically stored information, or objects _(blank if not applicable)_:

     See attached

   _(SEAL)_

Date:   3/16/16

                            _CLERK OF COURT_

                                            _Signature of Clerk or Deputy Clerk_

The name, address, e-mail, and telephone number of the attorney representing _(name of party)_ Bridget Anne Kelly _____, who requests this subpoena, are:

Michael Critchley, Esq.
Critchley, Kinum & DeNoia, LLC
75 Livingston Avenue - Suite 303
Roseland, New Jersey 07068
mcritchley@critchleylaw.com
973-422-9200

AO 89  (Rev. 08/09) Subpoena to Testify at a Hearing or Trial in a Criminal Case (Page 2)

Case No.

## PROOF OF SERVICE

This subpoena for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

☐  I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

☐  I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

## I.    DEFINITIONS AND INSTRUCTIONS

The following Definitions and Instructions apply to all documents and physical items subject to this Subpoena.

1.    "Records" and "Documents" include, but are not limited to, communications in whatever form, including emails, texts, voicemails, texts of voicemails, iMessages, instant messages, correspondence, notes, memoranda, agendas, word processing documents, spreadsheets, databases, telephone messages and logs, diaries, calendars and calendar entries.

2.    The terms "any," "all," "each," and "every" should be understood in either their most or least inclusive sense as necessary to bring within the scope of the Requests all Documents or Devices that might otherwise be construed outside of their scope.

3.    The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the Requests all Documents or Devices that might otherwise be construed outside of their scope.

4.    The use of the singular form of any word shall be taken to mean the plural as well as the singular, and the use of the plural form of any word shall be taken to mean the singular as well as the plural.

5.    The use of a verb in any tense, mood, or voice shall be construed as the use of the verb in all tenses, moods, or voices, as necessary to bring within the scope of the Requests all Documents or Devices that might otherwise be construed outside of their scope.

6.    Defined terms may be capitalized for convenience; the Definitions herein apply whether or not the term is capitalized.

7.    "OGNJ" means the Office of the Governor of New Jersey.

8.    For purposes of the production of "Devices," the term includes but is not limited to cellphones, iPads, tablets, laptops, and desktop computers.

1

## II.   DOCUMENTS AND PHYSICAL ITEMS TO BE PRODUCED

In response to these Requests, the OGNJ is required to produce all Documents and physical items in its possession, custody, or control, including Documents and Devices in the possession of, or available or accessible to, the OGNJ or any of its agents, *e.g.*, Stroz Friedberg, attorneys or representatives.

The timeframe of the Requests in this Subpoena is January 1, 2010 to present.

### A.   Documents Subject to this Subpoena

1.   All records relating to the closure of the access lanes for the Borough of Fort Lee onto the GWB ("Fort Lee access lanes") at any time including, but not limited to, September 9-13, 2013.

2.   All records relating to the Fort Lee access lanes regarding:

- alteration of the Fort Lee access lanes;
- consideration of altering Fort Lee access lanes;
- impact or potential impact on traffic flow through the Borough of Fort Lee resulting from any alteration of the Fort Lee access lanes; and
- all traffic studies or tests pertaining to Fort Lee access lanes.

3.   All records related to all traffic studies or tests pertaining to the GWB, its access lanes and approaches.

4.   All records relating to the Borough of Fort Lee or Mayor Mark Sokolich.

5.   All records relating to the following:

- William E. Baroni;
- David Wildstein;
- Bridget Anne Kelly; and
- William Stepien.

6.      A list of all personnel within the OGNJ from January 1, 2013 to present, and all mobile numbers and email addresses issued to, assigned to, used by or subscribed to by those personnel.

7.      All subpoenas received from the U.S. Attorney's Office for the District of New Jersey related to, or seeking documents regarding, the Fort Lee access lanes.

8.      All Documents and information referred to in the first full paragraph on Page 39 of the March 26, 2014 Gibson Dunn & Crutcher LLP Report.

**B.      Physical Items**

1.      Produce for inspection all phones and other Devices (collectively "Devices"), *e.g.*, iPads, computers, tablets, etc., including but not limited to those identified in the first full paragraph on Page 39 of the March 26, 2014 Report of Gibson Dunn & Crutcher LLP.

2.      Produce all forensic analyses conducted upon or related to all such Devices.

3.      All Documents demonstrating a chain of custody for each Device.

3

## III.    DOCUMENTS WITHHELD, REDACTED OR OTHERWISE NOT PRODUCED

    1.     If any document, or portion thereof, is withheld because the OGNJ claims that it is protected under the attorney-client privilege, work product doctrine, or other legally recognized privilege or doctrine, the OGNJ must provide a log that conforms with the sample attached as Exhibit A. Thus, for each document withheld or redacted, the log must contain the information in the order set forth in the sample log provided as Exhibit A. All Documents withheld or redacted shall appear grouped by each custodian, *e.g.*, the Documents withheld or redacted for a custodian shall not be interspersed with Documents withheld or redacted for other custodians. The logs shall be provided in Excel format so that they can be searched or sorted by column. If a field is empty, *e.g.*, "subject" or "cc," the log shall so indicate with the word "NONE," in all capital letters.

    2.     If a document is withheld based upon the Deliberative Process Privilege, or any similar privilege, provide the requisite affidavit signed by a person of appropriate authority stating or setting forth:

- that he/she personally reviewed each document claimed privileged;
- the specific designation and description of each Document claimed privileged;
- the precise and certain reasons for preserving the confidentiality of each Document; and
- the specific reasons why each document is pre-decisional and deliberative.

    3.     If the OGNJ claims that a portion of a document is protected from disclosure for any other legally recognized reason, the document must be produced with redaction of only the portion claimed to be protected. Every document produced in redacted form should clearly indicate on its face that it has been redacted. The OGNJ must produce a redaction log under the same format as required by the privilege log. The redaction log shall be a separate document from the privilege log.

4

4.       If any Document or Device called for by these Requests has been destroyed, discarded, otherwise disposed of, no longer exists, or is unavailable that Document or Device is to be identified in a log setting forth the following information:

- author(s), addressee(s), copy or blind copy recipient(s), date, subject matter, date of disposal;

- reason for disposal, the person authorizing the disposal, and the person disposing of the Document or Device; and

- the Document's or Device's last known location.

5.       If the OGNJ objects to a portion or an aspect of a Request, the OGNJ is required to state the basis for the objection with specificity within 14 days of the date on the Subpoena and to respond to any portions of the Request concerning which the OGNJ has not propounded an objection.

## IV.    FORMAT OF THE DOCUMENT PRODUCTION

1.     The documents shall be produced in the same order as maintained in the ordinary course of business and in accordance with Rule 45 of the Federal Rules of Civil Procedure.

2.     Each custodian's records shall be produced in electronic form in a folder bearing the custodian's name.    Within that folder will be subfolders that segregate the documents produced by type, *e.g.*, emails, documents, etc.

3.     Documents shall be produced as searchable PDFs, subject to the following:

- responsive documents that cannot be produced in PDF format due to technical reasons shall be produced in a computer-readable and text searchable format to be mutually determined by the parties; and

- Microsoft Excel files, Microsoft PowerPoint files, database files, HTML files and other responsive documents that are most conveniently viewed in their native electronic format shall be produced in their native electronic format.

4.     The OGNJ shall produce all drafts and copies of every document responsive to this Subpoena, and all copies of such documents that are not identical, including but not limited to copies containing handwritten notes, markings, stamps, or interlineations.

5.     Documents shall be produced in their entirety and as they are kept in the ordinary course of business. Thus, discrete Documents shall not be combined into one file, meaning that a 10-page memorandum and a 15-page letter shall be produced as two files, not as one 25-page PDF. Documents shall be produced with all enclosures and attachments. Documents attached to each other, including but not limited to by staple, clip, tape, e-mail attachment, or "Post-It" note, should not be separated. If a Document is covered in any way by, for example, a "Post-It" note, it must be produced with and without the obstruction, in consecutively Bates numbered pages, with the first document being the one in which it was kept in the ordinary course of business. The production must also include, where applicable, all index tabs, file dividers, designations,

6

binder spine labels, or other similar information as to the source and/or location of the Documents.

*       *       *       *

If the OGNJ has questions about this or any other requirement, please contact the firm that issued this Subpoena.