IN THE UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>    v.<br><br>WILLIAM E. BARONI, JR. and<br>BRIDGET ANNE KELLY<br><br>        Defendants. | Crim. No. 15-193 (SDW) |

**SUPPLEMENTAL DECLARATION OF RANDY M. MASTRO
IN FURTHER SUPPORT OF
NONPARTY OFFICE OF THE GOVERNOR OF NEW JERSEY'S
MOTION TO QUASH IN PART DEFENDANTS' SUBPOENA *DUCES TECUM***

I, Randy M. Mastro, pursuant to 28 U.S.C. § 1746, hereby declare that the following is true and correct:

1.   I am a partner in the law firm of Gibson, Dunn & Crutcher LLP, counsel to the Office of the Governor of New Jersey ("OGNJ").  Pending before this Court is our client's motion to quash a subpoena *duces tecum* issued by criminal defense counsel in this case.  In opposition to that motion, criminal defense counsel have now made spurious, false accusations that compel me to have to respond on behalf of our firm and our client.

2.   In their latest opposition, criminal defense counsel continue to try to turn this trial into a sideshow about our firm's internal investigation process on behalf of the OGNJ.  Criminal defense counsel now resort to "over-the-top" rhetoric, accusing our firm of orchestrating a "propaganda campaign."  KB 10; *see also* BB 2.  Their name-calling may appeal to the tabloid press, but it has no place in these proceedings.  While I welcome an honest assessment of our findings, which have stood the test of time, criminal defense counsel's latest attacks reek of desperation.  And they miss the point: This criminal case isn't about what Gibson Dunn did or

didn't do in its investigation. It's about what the Government found in its wholly independent investigation, and what the federal grand jury independently concluded in deciding to charge their clients. What Gibson Dunn did or didn't do is beside the point. But it bears mention that our firm had only one incentive—to uncover the truth—because we knew when we issued our report that the results of other investigations would come later and we would be judged by what those investigations found. And sure enough, those investigations—by the U.S. Attorney's Office, the federal grand jury, and the State Joint Legislative Committee, using subpoena powers unavailable to us—all later reached the same basic conclusions we had. It is those federal investigations and federal charges that these criminal defense counsel have to address, not Gibson Dunn's work. Instead of grappling with that reality, however, they continue to focus their attacks on a "straw man."

## CRIMINAL DEFENSE COUNSEL'S MOST EGREGIOUS MISSTATEMENTS

3. This causes me to have to address criminal defense counsel's most egregious misstatements in their opposition papers.

4. Criminal defense counsel accuse us, as officers of the court and counsel to a client responding to federal grand jury and other subpoenas, of "destroying" evidence, hiding "significant evidence of [others'] consciousness of guilt" within the Governor's Office, intentionally "failing to produce critical documents," and "making specious privilege assertions." KB 2, 10; BB 6. These baseless, defamatory attacks accusing us of ethical breaches and arguably worse are beyond the bounds of professionalism and acceptable advocacy. And of course, we did no such thing.

5. To be crystal clear, we responded to the Government's subpoenas by producing all documents in the OGNJ's possession relating to and contemporaneous with the GWB lane

Supplemental Declaration of Randy M. Mastro
Crim. No. 15-193 (SDW)

realignment. We withheld none of those documents on privilege grounds, and we have even offered to make an *in camera* submission to the Court of documents on our privilege log as confirmation. Moreover, as a further show of our good faith, we have now reviewed one more email account highlighted by criminal defense counsel—a personal joint marital account used by "Chris and Mary Pat Christie," not the Governor alone (as misdescribed by criminal defense counsel in their opposition papers)—that criminal defense counsel identified from one innocuous email produced by another non-party witness forwarding a New York Daily News story on the GWB lane realignment. We had not previously reviewed that joint marital account because we understood it to be a personal account that contained nothing responsive on the GWB lane realignment issue, but we have now, and it does not (beyond that one innocuous email). In short, criminal defense counsel have no basis whatsoever for making these scurrilous accusations against us.

6. Ms. Kelly's criminal defense counsel makes another egregious misstatement in telling this Court that "Ms. Kelly served the exact same subpoena the USAO served to the OGNJ." KB 3. But that claim is demonstrably false. Indeed, even the Government observed in a recent letter to the Court that Defendants only "received permission from this Court to issue Rule 17(c) subpoenas to the OGNJ calling for the production of the same documents that were requested by the Government during the Grand Jury investigation," but instead, criminal defense counsel issued a subpoena with "additional demands" that did not "replicate" the Government's. Doc. 129 (June 24, 2016 Letter). On that basis alone, the Court should be quashing this subpoena, which went well beyond what criminal defense counsel represented they would be seeking and this Court then authorized, based on that representation. We have already produced

Supplemental Declaration of Randy M. Mastro
Crim. No. 15-193 (SDW)

to criminal defense counsel all of the documents that we produced to the Government pursuant to GWB-related subpoenas.  That should end this inquiry.

7. Ms. Kelly's criminal defense counsel also draws a false comparison between inconsequential texts about ongoing legislative hearings that admittedly were not retained on personal devices and the directive that Ms. Kelly gave to a subordinate to delete an incriminating contemporaneous text confirming her involvement in the GWB lane realignment.  Ms. Kelly's criminal defense counsel now claims that Gibson Dunn had a "blind spot" when it came to "damaging information" about others in the Governor's Office, "did nothing to investigate" the missing "text exchange," and "falsely condemn[ed]" Ms. Kelly by failing to apply "the same standard" to her.  KB 9-10.  But we simply saw Ms. Kelly's directive for what it was—she sought the destruction of evidence so the Governor would not learn of her involvement in the GWB lane realignment.  Ms. Kelly's defense counsel does not deny that this occurred.  Instead, he seeks to smear others, including us and our client.  But he misses the point.  There was nothing inherently damaging or suspect about a few missing texts between the Governor and a top aide (Regina Egea), who admitted she failed to retain the texts, which, as she recalled, merely contained observations about ongoing legislative hearings.  *See* Supp. Southwell Decl., Ex. B.  Indeed, we reported in our memorandum memorializing Ms. Egea's interview that she recalled texting with the Governor during those hearings.  *See id.*, Ex. A.  And she later testified at length before the Joint Select State Legislative Committee about the missing texts (*see id.*, Ex. B)—to the apparent satisfaction of the Committee, as reflected in its final report (*see id.*, Ex. C).

8. Criminal defense counsel also repeat their misstatement that Gibson Dunn "destroy[ed] its witness interview notes," now even falsely claiming we "admitted[]" to doing so.  KB 2, 23.  For the reasons previously explained, we did no such thing and admitted no such

Supplemental Declaration of Randy M. Mastro
Crim. No. 15-193 (SDW)

thing.  As previously explained, our interviews were memorialized in a single interview memorandum, contemporaneously created and then reviewed and edited for accuracy. 4/28/2016 Mastro Decl. ¶ 13.  And those interview memoranda were then produced to the U.S. Attorney's Office, the defense here, and the public at large.  *Id.* ¶ 12.  No other record of interviews was made.  In other words, we never took any handwritten notes, let alone destroyed any.

9.     Equally appalling is the way in which criminal defense counsel now attempt to sully the reputation of my partner, Debra Wong Yang, who is a former judge, served as a U.S. Attorney, and is now one of the most respected white collar practitioners in this country.  Indeed, she was recently honored by Chambers, a respected peer review publication, as the nation's "White Collar Lawyer of the Year."  But defense counsel here now claim her limited participation in our investigation created an "extraordinary conflict" because of her "longstanding friendship and professional interactions with the Governor."  KB 24; BB 6 n.3.  That Debra Yang came to know Governor Christie when both served honorably as U.S. Attorneys within the U.S. Department of Justice is a matter of fact, not cause for criticism.  She did not work full-time on this investigation.  In fact, she worked far less than any of the other former federal prosecutors who joined me in conducting this investigation.  I led the investigation, from start to finish, and I had no prior relationship with Governor Christie.  In fact, I met him for the first time the day he hired our firm to conduct this internal review.  And as previously mentioned, we had only one objective throughout this process—to uncover the truth.  And we believe we did.  And subsequent investigations—at both the federal and state levels—apparently agree, because they reached the same basic conclusions we did.

Supplemental Declaration of Randy M. Mastro
Crim. No. 15-193 (SDW)

10.	Criminal defense counsel also try to smear us by repeating their false mantra about the millions of dollars our firm "charg[ed] New Jersey taxpayers" for our internal investigation.  BB 6.  But most of those fees were incurred responding to the sweeping subpoenas from the U.S. Attorney's Office and the Joint Select State Legislative Committee, which required us to screen literally millions of pages of documents to identify the tens of thousands of documents that were responsive to those subpoenas.  And it bears mention that our firm did this work at a substantially reduced rate—less than half of our customary charges—equal to the rate that another major national law firm (Jenner & Block) charged the State for its services in representing the State Legislative Committee.

11.	Finally, criminal defense counsel ludicrously claim that "Gibson Dunn is running the show" here.  BB 7.  That assertion strains credulity beyond the breaking point.  We want no part of this show.  And we have no role to play.  Yet criminal defense counsel keep trying to drag us to center stage or, at the very least, create a distracting sideshow.  But this is the U.S. Attorney's Office's case, and it is that office's prosecutors who are obviously "running the show."  So I respectfully request that the Court quash this subpoena and make plain to criminal defense counsel that this sideshow has to end.

I declare under penalty of perjury that the foregoing is true and correct.  Executed on this 28th day of June, 2016 at New York, New York.

/s/ Randy M. Mastro
Randy M. Mastro