# CRITCHLEY, KINUM & DENOIA, LLC
ATTORNEYS AT LAW
75 LIVINGSTON AVENUE - SUITE 303
ROSELAND, NEW JERSEY 07068

MICHAEL CRITCHLEY
MICHAEL CRITCHLEY, JR.
CHRISTOPHER W. KINUM
EDMUND DeNOIA
AMY LURIA

CHRISTOPHER L. FOX

(973) 422-9200

FAX: (973) 422-9700
web site: www.critchleylaw.com

November 2, 2016

**Via ECF**

Hon. Susan D. Wigenton, U.S.D.J.
Martin Luther King Building
& U.S. Courthouse
50 Walnut Street
Newark, New Jersey 07101

*Re:* *United States v. William E. Baroni, Jr. and Bridget Anne Kelly*
*Crim. No.: 15-193 (SDW)*

Dear Judge Wigenton:

Please accept this letter in lieu of a more formal submission on behalf of both defendants, seeking to reconsider the Court's response to jury question 4. In this matter, the only evidence presented to the jury of misapplication of Port Authority property was to realign traffic lanes as punishment of Mayor Sokolich. By simply answering "yes" to jury question 4, the Court has stripped away the essential element of "misapplication" which could now allow the jury to convict the defendant(s) for use of Port Authority resources for proper purposes. Moreover, the jury is left with the improper impression that a defendant can be convicted of conspiracy even if the defendant did not act intentionally. Simply put, the Court should have answered question 4 in one of the following ways:

1) No;

2) Yes, a defendant can be convicted without intending to punish Mayor Sokolich. However, since misapplication is an element of the offense, in order to convict, the jury must unanimously find that the defendant(s) intentionally misapplied the property of the Port Authority in some other

      illegal manner rather than believing the realignment was a legitimate traffic study; or

3) Please be guided by the jury instructions.

As the record exists now, at minimum the jury should be reinstructed that while they may convict a defendant for conspiracy even if not done intentionally to punish Mayor Sokolich, they must still unanimously find that defendants *intentionally* misapplied Port Authority resources for some other illegal purpose.

Separately, Ms. Kelly requests the Court reconsider the exclusion of the "punishment" element of the offenses. Defendants' also request that the Court amend its response to Jury Question 4 for the following additional reasons. That question asked, "Can you be guilty of conspiracy without the act being intentionally punitive toward Mayor Sokolich?" Rejecting the defense's request that the Court simply respond "no," the Court responded, "Yes, please consider this along with all other instructions that have been given to you." As the Court explained prior to giving that response, "I've already ruled . . . that motive is not an element that has to be proven. So to now respond to the jury and say . . . no . . . goes directly in contravention to what I've already ruled and what I've said." 11/1 Tr. at 25:18-23.

The Court is correct that instructing the jury that it cannot find the defendants guilty of the conspiracy charged in the Indictment without finding that they intended to punish the mayor would contravene its prior instruction. But such an instruction would be perfectly consistent with Third Circuit law on the subject, see *U.S. v. Schramm* 75 F. 3d 156 (1996), and with this Court's own opinion denying Defendants' motion to dismiss the Indictment. In that opinion, your Honor expressly—and correctly—stated: "[T]he indictment alleges that the Defendants concocted a sham traffic study in order to reduce Local Access Lanes on the GWB during morning rush hour without prior notice in order to cause significant traffic in Fort Lee ***to punish Mayor Sokolich***." United States v. Baroni, 2016 U.S. Dist. LEXIS 77127, *7 (emphasis supplied). The Court went on to make this point repeatedly; the following quotations are all drawn directly from your Honor's ruling:

### COUNTS I AND II

To sufficiently assert a violation of § 666, the Indictment must allege . . . [that] Defendants intentionally misapplied Port Authority property . . . worth at least $5,000. Id. at *11-12. . . . Under § 666, "misapplication 'includes the wrongful use of [that] . . . property for an unauthorized purpose, even if such use benefitted the (organization)." Id. at *13-14, quoting 3d Cir. Model Crim. Jury Instr. § 6.18.666a1a-3. "Thus, this Court is unpersuaded by Defendants' position that no misapplication occurred because Port Authority personnel were at all times engaged in their normal functions and the toll booths and lanes leading to them were still open and operational. That speaks only to the Defendants' success in keeping their motives and goals hidden, not to the impropriety of those motives and goals. The Indictment clearly informs Defendants that they are being charged with misusing Local Access Lanes, tollbooths and Port Authority personnel ***for retribution against Mayor Sokolich in violation of § 666***. This Court finds that the Indictment

alleges facts sufficient as to the misapplication element." 2016 U.S. Dist. LEXIS 77127, *14 (emphasis supplied).

### COUNTS III - VII

"Defendants attempt to argue that they could not have defrauded the Port Authority because Baroni and Wildstein had unfettered power and authority to change the configuration of the lanes at any time and for any purpose. The existence and scope of Wildstein and Baroni's authority, however, is again a question of fact for the jury. At this juncture, this Court is limited to reviewing the sufficiency of the allegations contained in the Indictment, which charge that Defendants acted outside the scope of their authority in order to pursue goals that were unrelated to and at odds with the mission of the Port Authority. Defendants may challenge those allegations at trial and show that Wildstein and Baroni were not defrauding their employer because they were acting within the bounds of the powers granted to them, but this Court cannot and should not make that factual determination at this juncture." Id. at *22-23. "The facts as alleged in the Indictment here are quite different [than those in United States v. Thompson, 484 F.3d 877 (7th Cir. 2007)], and involve individuals allegedly determined to upend expected traffic patterns *to get back at a political opponent*." Id. at *15 n.5.

### COUNTS VIII - IX

Here, the Indictment alleges that Defendants conspired to, and in fact did, disrupt traffic for Fort Lee residents on the GWB, impeding their right to travel inside the state of New Jersey free from arbitrary impediments. Defendants did so, the Indictment charges, not to achieve a legitimate and significant government interest, but rather to achieve an illegitimate political end—*i.e. the punishment of Fort Lee's mayor for failing to support Governor Christie's re-election. . . . Political payback is not a significant government interest."* Id. at *28 (emphasis supplied).

Thus, in denying Defendants' motion to dismiss the Indictment, the Court informed them that they were accused of agreeing to misapply, and in fact misapplying, Port Authority resources to punish Mayor Sokolich for refusing to endorse Governor Christie for reelection. In light of the Court's ruling, and faced with an Indictment that made that express allegation in every single count, Defendants set about defending it. But at the eleventh hour, having failed to adduce any proof to support that allegation, the Government changed the frame and argued that the jury should be instructed that it could find Defendants guilty *without* proving they intended to punish Mayor Sokolich. The Court agreed with the Government and so instructed the jury over Defendants' objection, finding that motive is not an essential element of a conspiracy charge.

While it is true that motive is not an essential element of every conspiracy, it *is* an essential element when the grand jury charges a defendant with conspiring to do, and in fact doing, something he is authorized to do, but doing it for an improper purpose. In *Schramm*, the Third Circuit was confronted with the precise issue before this Court: whether it was essential that the Government prove that the defendant "entered into an agreement and knew that the agreement had the specific unlawful purpose charged in the indictment." 75 F.3d at 163. The court concluded that it was essential that the Government do so. Its cogent analysis of the question and explanation

3

of its conclusion bears reproduction here, for it is uniquely applicable to this case. The *Schramm* court wrote:

> In cases which involve a conspiracy charge, the illegal object of the conspiracy is an essential element of the offense and must be included in the indictment. See *United States v. Shaffer*, 383 F. Supp. 339, 342 (D. Del. 1974).
>
> As discussed earlier, Count I of the indictment, which charges a conspiracy, sets forth two purposes. The jury convicted DeCello of agreeing to accomplish the second purpose. The second purpose, which was set forth in paragraph 18(b), was to devise and execute a scheme and artifice to defraud by the use of the United States mail, "particularly, to evade and defeat the full payment of the Fuel Use Tax imposed on the sale of diesel motor fuel under the laws of the Commonwealth of Pennsylvania . . ." App. at 194-95 (emphasis added). To accept the district court's conclusion, we would be required to interpret "particularly" as used in paragraph 18(b) to mean "for example" or "as one example among others," and to assume that the "other" charges to which the word "particularly" refers included the evasion of taxes not set forth in the paragraph itself. But the word "particularly," as it appears in paragraph 18(b), is synonymous with "to-wit," a term commonly used in indictments to refer to a discrete event. Likewise, "particularly" as used here is synonymous with the more conventional "specifically," which, in fact, is used in paragraph 18(a) of the indictment. See Merriam Webster, Webster's Ninth New Collegiate Dictionary 858 (1985). Both terms ("specifically" and "particularly") are used to set forth detailed descriptions of the conspiracy's goals; they are exclusive, not inclusive. If the government had intended to charge DeCello with agreeing to participate in a scheme to violate Pennsylvania's wholesale tax as well, it easily could have, and certainly should have, done so.
>
> While courts must ignore minor and technical deficiencies in an indictment, *Russell v. United States*, 369 U.S. 749, 763, 8 L. Ed. 2d 240, 82 S. Ct. 1038 (1962) ("Convictions are no longer reversed because of minor and technical deficiencies which did not prejudice the accused."); *Hagner v. United States*, 285 U.S. 427, 433, 76 L. Ed. 861, 52 S. Ct. 417 (1932) (holding that courts must "disregarded merely loose or inartificial forms of averment."), an indictment's failure to specify the object of a conspiratorial agreement cannot be considered a minor or technical deficiency which can be ignored. As we have said, "the essence of a conspiracy is an agreement." United States v. Kelly, 892 F.2d 255, 258 (3d Cir. 1989). The goal or goals of the agreement are, therefore, essential elements of the crime of conspiracy itself. An omission such as occurred here deprives the defendant of one of the significant protections which the guaranty of a grand jury indictment is intended to confer. By not specifying the evasion of the federal excise tax or of Pennsylvania's wholesale fuel tax as one of the goals of the conspiracy in paragraph 18(b), the indictment failed to apprise DeCello "with reasonable certainty, of the nature of the accusations against him." Russell, 369 U.S. at 766 (quoting United States v. Simmons, 96 U.S. 360, 362, 24 L. Ed. 819 (1877)). To adopt the district court's interpretation of the indictment would be to allow DeCello's "conviction to

rest on one point and the affirmance of the conviction to rest on another," giving "the prosecution free hand on appeal to fill in the gaps of proof by surmise or conjecture." *Russell*, 369 U.S. at 766. This we cannot do.

Paragraph 18(b) of the indictment alleges only that DeCello agreed to use the United States mails to evade Pennsylvania's Fuel Use Tax. It does not allege an agreement to evade any wholesale level taxes, and we cannot interpret paragraph 18(b) of the indictment as implicitly including the evasion of such taxes as additional goals of the conspiracy. … Because the government failed to produce sufficient evidence at trial to convince the jury to convict DeCello under paragraph 18(a) of the indictment and because the government further failed to prove that DeCello entered into an agreement and knew that the agreement had the specific unlawful purpose charged in paragraph 18(b) of the indictment, we will reverse DeCello's conviction and direct the entry of a judgment of acquittal.

*Schramm*, 76 F.3d at 163-64.

Thus, *Schramm* makes clear that where, as here, the Indictment charges a conspiracy to accomplish a specific unlawful purpose—in this case, political retribution against the Mayor of Fort Lee for not endorsing the Governor—the Government must prove *that* unlawful purpose. The grand jury did not charge Defendants with redirecting traffic, something they were authorized to do. Rather, it charged them with doing so for the improper purpose of punishing the mayor. This is not a murder or kidnapping case, in which it matters not why the defendant committed the crime provided it is proven that he did so. Rather, it is a misapplication case, in which to prove the crime required the Government to prove the improper purpose of punishment. It was error to instruct the jury otherwise, and the Court should correct that error now.

The defendants respectfully request that the court re-instruct the jury concerning the object of the conspiracy in response to jury question no. 4

Respectfully submitted,

*/s/ Michael Critchley*
Michael Critchley